The STATE OF ILLINOIS et al.,
Plaintiffs,

v.

HARPER & ROW PUBLISHERS, INC.,
et al., Defendants.

No. 67 C 1899.

United States District Court,
N. D. Illinois, E. D.

May 2, 1972.

See also, D.C., 50 F.R.D. 37.

## MEMORANDUM OPINION

DECKER, District Judge.

Five years ago the first of forty-nine cases was filed alleging that certain publishers and wholesalers of children's books had illegally conspired to eliminate discounts on sales of library editions to schools and libraries. Twenty-five of the cases were class actions. The remainder were non-class action cases.

The new Multidistrict Litigation Statute, 28 U.S.C. § 1407, was invoked, and on October 17, 1968, the first series of

cases was transferred to me by the Judicial Panel on Multi-District Litigation for consolidated pretrial purposes, with the balance of the cases being transferred to me by the Panel over the next year and six months. Since receiving the initial transfer, I have presided over comprehensive pretrial discovery proceedings in which the petitioners, as liaison counsel for all plaintiffs, were arrayed against a well organized phalanx of competent and aggressive defense counsel representing thirty-two publishers and forty-two wholesalers.

Despite this determined opposition, successive sets of interrogatories were propounded and finally answered, scores of depositions were taken, numerous briefs were filed, posing novel and sophisticated theories of liability and damage.

On two occasions, the discovery process was brought to a halt by the filing of mandamus petitions, which were carried all the way ot the United States Supreme Court.[1] The onus of representing the court throughout these proceedings, including the preparation of extensive briefs and making of oral argument in the Supreme Court, was borne by petitioners.

The continued vigorous prosecution of the cases filed by petitioners produced financial results. By March 3, 1971, petitioners had obtained settlements from a number of defendants in their nine class action suits amounting to $3,461,628., and a petition was filed by them to distribute this amount, plus accrued interest,[2] to the eligible class members after first deducting their expenses and reasonable attorneys fees from the gross settlement. Petitioners at that time requested and secured an allowance of fees in the amount of 20% of the gross settlement proceeds, which petitioners determined to be $662,000.

After March 3, 1971, petitioners continued to press their cases against the non-settling defendants, and after considerable skirmishing, a trial date of February 7, 1972, was set. The trial setting had a therapeutic effect, and as the date approached, all of the defendants, except one, capitulated and entered into settlement agreements. The obdurate defendant made it necessary for the petitioners to prepare fully for trial. Petitioners filed a thorough pretrial brief, a complete narrative statement of facts, designated their trial exhibits and deposition testimony and filed and briefed objections to material designated by defense counsel.

The trial date arrived, and the first day was spent without the jury in disposing of objections and arranging trial exhibits. On the second day, while the jury was waiting to be called, a settlement agreement was announced, and the last of the "book cases" was settled.

Having this protracted litigation finally behind them, petitioners filed another petition in which they reported that they had on hand for distribution to class members from settlements achieved since March 3, 1971, the sum of

1. In Harper & Row Publishers, Inc. v. Bernard M. Decker, (Pet. for writ of mandamus denied, 1/9/69, 7th Cir. No. 17320), cert. den. 394 U.S. 944, 89 S.Ct. 1273, 22 L.Ed.2d 478 (1969), the petition involved a discovery order for the production of documents obtained from publishers and wholesalers during a grand jury investigation.
   In Harper & Row Publishers, Inc. v. Bernard M. Decker, 423 F.2d 487 (7th Cir. 1970) (affirmed in part and reversed in part), affirmed by an equally divided court, 400 U.S. 348, 91 S.Ct. 479, 27 L.Ed.

2d 433 (1971), the petition concerned a discovery order requiring production of debriefing memoranda obtained from corporate employees after their appearance before a grand jury against a claim of attorney-corporate client privilege and work product.

2. As settlements were secured from time to time, petitioners invested the settlement proceeds in interest-bearing securities, thereby increasing the amount available to class members when distribution was made.

$3,213,287.,[3] plus interest, and requested a further allowance for expenses and attorneys fees. After setting forth the legal services performed by them since March 3, 1971, petitioners requested that their fees be fixed again at 20% of the gross recovery, which, in this case, would amount to $665,000. It is this petition that is before the court.

Although notices were sent to class members, specifying that attorneys fees amounting to 20% would be requested, with a provision for filing objections, no objections have been filed. This places the court in the unenviable position of acting *sua sponte* in a situation in which the easier road to follow would be to approve the fee request without comment. As a rationalization for automatically granting the 20% fee, other class action settlements could be cited where contingent fees of 25% to 30% have been routinely approved. In my opinion, Rule 23 F.R.Civ.P. is more demanding than this and

> "place[s] the court in the role of a third party to the compromise or guardian of the absent parties . . . . The absence or silence of [class members] does not relieve the judge of his duty and, in fact, adds to his responsibility." Norman v. McKee, 290 F.Supp. 29, 32 (N.D.Cal. 1968).

If I am to carry out this responsibility, I must assume the burden of reviewing the petition for fees on behalf of the 3,000 schools and libraries comprising the class.

### The Contingent Fee Syndrome

Petitioners have contingent fee agreements with a number of specific plaintiffs in this case which, with one exception,[4] call for a flat contingent fee of 20% of the total recovery. Following the practice of attorneys in other class action cases that have been settled, the fee petition makes no distinction between the fees to be charged the representative plaintiffs and the class members.

Petitioners urge that these prior fee arrangements should be considered as an important factor in the assessment of fees to be charged, even as to absent class members. I recognize that this procedure had been followed in the settlement of a number of class action cases in which the contingent percentage fee arrangements have been automatically extended to class members. While the assessment of a flat percentage fee to cover all plaintiffs may relieve the court from the burden of making its own evaluation of the reasonable value of the services rendered, I do not believe that it is fair to the class members who were unrepresented when the fee contracts were made.

I have some difficulty accepting the premise that a contingent fee contract on a fixed percentage basis will ultimately result in a reasonable and fair fee because some of the plaintiffs have approved it. These contracts are entered into before any services have been performed and generally provide for a fixed percentage fee whenever a case is settled, without any reference to the quality of the services rendered or the time and effort required to effect the settlement. As the size of class action settlements increases, with millions of dollars involved in some cases, the fallacy of adhering to a fixed percentage fee formula becomes more evident.

The two petitions for fees filed by petitioners illustrate the point. Both petitions, in addition to enumerating the services, contain a statement of the time

---

3. The first installment is to be paid in May, 1972. The second installment is to be paid in January, 1973.

4. In the Indiana case (68 C 2257), the agreement provided for a fair and reasonable amount . . . subject to the approval of the judge . . . but in no event in excess of 20% of the aggregate amount of such recovery.

spent by counsel in achieving the settlements. It appears that the fees earned on the first wave of settlements represent over three years and six months of work, while the services described in the present petition cover a period of only one year. In achieving the settlements reported on the first wave, petitioners reported spending a total time of 8,633 hours, with 6,216 hours by partners and 2,417 hours by associates. For the year covered by the present petition, including the concentration of time spent in preparing for trial, the total time logged was 3,975 hours, with 2,466 hours spent by partners and the remainder of 1,509 hours by associates. Notwithstanding this disparity of time, petitioners are requesting approximately the same fees on the second wave as they received on the first wave.

This unusual result is accomplished by applying the flat 20% fee formula to the amount collected. If the time factor involved in accomplishing a class action settlement is to be given any consideration, then the contingent fee contract should not control here.

On the whole, I think counsel and the bench in class action suits have adhered all too closely to this contingent fee syndrome, and the time has come to inject a modicum of flexibility and creativity into the award of counsel fees. If Rule 23 is to be preserved against deserved criticism, some attempt must be made by the court to suit the award of fees to the performance of individual counsel in light of the size of the settlement. Otherwise, the attorneys who are taking advantage of class actions to obtain lucrative fees will find themselves vulnerable to the criticism expressed in the Italian proverb, "A lawsuit is a fruit tree planted in a lawyer's garden."

Insofar as class members are concerned, the percentage figure, if one is required, should follow the services. At this point the court will be in a position to appraise all of the relevant factors, including the risk that plaintiffs' counsel assumed in undertaking the litigation. If counsel's performance and the benefits received by the class members warrant a generous fee, the court can grant it without considering any prior arrangements between counsel and his individual clients.

Having disowned the contingent fee formula, the question remains, "What are the factors to be considered in determining a reasonable fee for services in the settlement of a class action suit?"

*Standards for Awarding Attorneys Fees Upon Settlement of a Class Action*

While class actions under Rule 23 present a congerie of unique problems, many of the same standards can be used in assessing the attorneys' performance as in any protracted complicated litigation.

When considering the fees to be awarded, a court may properly take into account such factors as the novelty and difficulty of the questions involved, the professional standing of the attorney in the particular field, the diligence and skill exhibited, the amount involved, and the time fairly spent on the case. In re Westec Corp., 313 F.Supp. 1296, 1302–1304 (S.D.Texas 1970), and the cases cited therein.

There is general agreement that when the employment is undertaken on a contingent basis, counsel is entitled to a higher measure of compensation when he achieves success. Freeman v. Ryan, 133 U.S.App.D.C. 1, 408 F.2d 1204, 1206 (1968).

Finally, and more important than any of the foregoing, the fee should be measured in relation to the benefits conferred upon the members of the class. There is no better test than this of the efficacy of the services rendered.

In addition to the foregoing, it has been suggested in the proposed changes in the Manual for Complex and Multidistrict Litigation issued by the Board of Editors in February 1972 that certain

other standards should be applied in considering an application for fees upon the settlement of a class action. These include a recognition of the following:

"(1) that in seeking and accepting employment as counsel for a judicially determined class an element of public service is involved; (2) the representation of the class by counsel is not a result of private enterprise but results from provision of an opportunity to represent the class by a judicial determination; and (3) the policy of the law in class actions, including antitrust actions, is to provide a motive to private counsel to represent consumers and to enforce the laws." (Proposed § 1.47 of Manual)

The editors of the manual are considering the further suggestion that:

"Once adequate compensation sufficient to provide the motive for representation of classes is provided, no further incentive is required. In this connection, while any fee allowed in the case of a settlement or recovery through litigation may constitute a percentage of the total amount recovered, the reasonableness of the fee arrived at should not rest primarily on the selection of a percentage of the total recovery. Although the results obtained in representing the class should be given consideration as provided in the Code of Professional Responsibility, there should also be an emphasis upon the time and labor required and the effect of the allowance on the public interest and the reputation of the courts. In no event should representation of a judicially determined class be allowed on the same basis as in a contingent fee contract between competent contracting counsel and client." (Proposed § 1.47 of Manual)

The additional suggested standards would have particular pertinency to this case.

The beneficiaries of petitioners' services are public schools and public libraries who were allegedly overcharged for a period of years for their purchases of hardcover library books. No single school or library had sufficient purchases to justify litigation. The 3,000 clients were furnished to petitioners, not as a result of private employment, but rather by the court's determination that the requirements of Rule 23 had been met.

Under these circumstances, I can see no unfairness to petitioners by disregarding the contingent percentage fee contracts and making my own determination of the reasonable value of petitioners' services.

The argument has been made that ignoring contingent fee contracts insofar as the class members are concerned will introduce some kind of inflexibility in the fixing of fees. The only inflexibility that appears to me is the present adherence to the contingent percentage fee formula from case to case without reference to the other factors that generally determine the reasonableness of a fee allowance.

Now to get down to specifics by applying these factors to determine what further award will be both fair and reasonable for the services performed by petitioners.

*Petitioners' Services and the Benefits received*

Petitioners clearly qualify as skillful and experienced counsel in the field of antitrust law. In addition to these cases, petitioner Lee A. Freeman has appeared in a large number of important class action suits throughout the United States. Although other plaintiffs' attorneys participated in this litigation until their cases were settled, the court's principal reliance from the beginning has been on Lee A. Freeman as lead and liaison counsel. The heart of the "book cases", insofar as the plaintiffs have been concerned, has always

been in the Freeman law office. It was petitioners who criss-crossed the country taking more than 100 depositions and collecting and tabulating an estimated one million transaction documents in preparation for trial.

When this court's order had to be defended in the Court of Appeals and in the United States Supreme Court in the second of the mandamus actions, I had in Lee Freeman, Jr., as able a brief writer and as earnest an advocate as I could have selected.

What is more important, this type of dedicated and zealous representation has obtained excellent financial results for the class members. The settlements obtained in the Freeman cases are by far the best settlements secured in any of the "book cases". Petitioners not only achieved these advantageous settlements but invested the settlement sums at high interest rates, thereby obtaining on the two waves of settlements an additional $260,000. to be distributed to the plaintiffs.

These settlements were not easily accomplished. Unlike some attorneys who undertook and completed their settlement negotiations almost immediately after the filing of their suits, petitioners aggressively prosecuted their cases and convinced the defendants one by one that if an adequate settlement were not made, there would certainly be a trial and a possible day of reckoning.

Petitioners established routines in their office by which statistical tabulations and other similar administrative work were performed by graduate students, specially qualified machine operators and tabulating personnel, thereby saving a great deal of lawyers' time. Petitioners also substantially reduced the costs of making distribution by entering into favorable contracts with computer companies. As a result of these efforts, petitioners total reimbursable expenses amounted to less than $1\frac{1}{2}\%$ of the settlements achieved in contrast to expense claims made in other cases ranging from 4% to 10% of the settlement amounts.

The benefits to class members continued to the date scheduled for trial, when the last defendant to settle increased its settlement offer from an initial figure of $115,000. to $525,000.

The class members have further benefited from the fact that after the filing of these suits, during the years 1969 and 1970, discounts of as much as 42% on trade editions and over 16% on library editions were being increasingly offered.

Without question, petitioners have given the class members the highest quality of conscientious representation and have achieved for them substantial benefits.

After taking all of these factors into consideration, the court has determined that petitioners, Lee A. Freeman and Lee A. Freeman, Jr., are entitled to a further fee in the amount of $475,000. for services rendered by them in achieving the second wave of settlements and for further services to be performed in making a final distribution and furnishing a report thereon. This award, with the attorneys fees already allowed in the amount of $662,000., will provide petitioners with a generous overall fee which they have rightfully earned, and at the same time will be fair to the class members who, as the ultimate beneficiaries, have benefited from their services.

Further, an allowance of fees in this amount will surely provide a sufficient incentive to competent counsel to remain in this field of public interest litigation.