**William COLSON, Plaintiff,**

v.

**HILTON HOTELS CORPORATION, et al.,**
**Defendants.**

**No. 71 C 1590.**

United States District Court,
N. D. Illinois, E. D.

Sept. 27, 1972.

See also Jud.Pan.Mult.Lit., 341 F. Supp. 771.

Philip H. Corboy, Chicago, Ill. (Corboy, Kotin & Assoc., of counsel), Chicago, Ill., Colson & Hicks, P.A., Miami, Fla., Fuchsberg & Fuchsberg, New York City, Joseph W. Cotchett, San Mateo, Cal., Goldstein, Barceloux & Goldstein, San Francisco, Cal., Hafif & Shernoff, Claremont, Cal., Granvil I. Specks, Specks & Goldberg, Chicago, Ill., for plaintiff.

Steinhart, Goldberg, Feigenbaum & Ladar, Marvin D. Morgenstein, San Francisco, Cal., for Hyatt Corp.

Howard L. Kastel, Altheimer, Gray, Naiburg & Strasburger, Chicago, Ill., for Pick Hotels Corp.

Gus J. Athas, Hinsdale, Ill., for Sheraton Corp.

Sheldon Karon, of Friedman, Koven, Shapiro, Salzman, Koenigsberg, Specks & Homer, Chicago, Ill., for Hilton Hotels Corp.

Earl E. Pollock, Arnold H. Dratt, Sonnenschein, Levinson, Carlin, Nath & Rosenthal, Chicago, Ill., for Marriott Corp.

Richard J. Brennan, Edward J. Wendrow, Winston, Strawn, Smith & Patterson, Donald L. Asher, Chicago, Ill., for Bismarck Hotel Co.

Jack Friedman, New York City, for Loews San Francisco Hotels.

## MEMORANDUM OPINION

### Application For Allowance Of Plaintiffs' Attorneys' Fees

MAROVITZ, District Judge.

The attorney's fees sought by plaintiffs' counsel in this case arise out of a suit filed on July 2, 1971 on behalf of all guests of various defendant hotels alleging that the hotels had engaged in a conspiracy and in acts in violation of antitrust laws by increasing their rates from one to three percent through an illegal service charge for incoming phone calls. The initial suit alleging these violations was filed on April 22, 1971 in the Central District of California and was followed by nine other virtually identical suits, the action now before us being among them. In September of 1971 settlement negotiations were entered into by counsel for plaintiffs in this District with defendant Hilton Hotels, with defendants Loews, Bismarck and ITT

Sheraton joining in the negotiations shortly thereafter. A settlement agreement was reached with Hilton, Loews, and Bismarck in December of 1971, with a similar settlement being reached with ITT Sheraton in January of 1972. The settlement called for payment by the settling defendants of a total of $5,945,679.00 representing the full amount of overcharges collected by settling defendants between 1966–1971. The amount of $769,293.00 was subtracted from this sum to be paid by defendants Hilton, Loews and Sheraton in settlement of actions filed by the New York Attorney General leaving a net settlement sum of $5,176,386.00. Of this latter figure $18,980.03 is to be paid to verified claimants and $5,157,405.97 is to be credited to future guests at a rate of 50 cents per occupied room per stay.

Plaintiffs' attorneys seek fees for 6,238 hours in the amount of $1,783,-702.00, a figure which represents 30% of the $5,945,679.00 awarded to the class in settlement. The fees however are not to be paid out of this latter fund but rather *in addition* to the settlement sum. The settlement agreement provides for out-of-pocket expenses to be paid by defendants plus "Plaintiffs' counsel fees in an amount (not exceeding 30% of the settlement sum) set by the Court." Various objective "checklists" have been devised as guidelines for determining a fair award of attorneys' fees. One of the most oft quoted lists is that of Judge Woolsey first appearing in In re Osofsky, 50 F.2d 925 at 927 (S.D. N.Y.1931):

(1) The time which has fairly and properly to be used in dealing with the case; because this represents the amount of work necessary. (2) The quality of skill which the situation facing the attorney demanded. (3) The skill employed in meeting that situation. (4) The amount involved; because that determines the risk of the client and the commensurate responsibility of the lawyer. (5) The result of the case, because that determines the real benefit to the client. (6) The eminence of the lawyer at the bar, or in the specialty in which he may be practicing.

Judge Decker likewise used these criteria in one of the most recent cases in this District involving attorneys' fees, State of Illinois v. Harper & Row Publishers, Inc., 55 F.R.D. 221 (N. D.Ill.1972). (See also In re Westec Corp., 313 F.Supp. 1296 (S.D. Texas 1970)). From among the multitude of factors to be considered two have emerged as carrying greater weight than the others; that a case entered into under contingency fee arrangements ought to yield a greater degree of compensation upon successful prosecution of the action, (Freeman v. Ryan, 133 U.S. App.D.C. 1, 408 F.2d 1204 (1968)); and that compensation should be a function of the benefits conferred upon the members of the class, (See *Harper & Row,* supra, 55 F.R.D. at 224).

Needless to say objective "checklists" are merely the broadest of perimeters within which a Court ought to operate in reaching its decision. The variations that can arise by superimposing these general principles over subjective factors are numerous indeed and no one case fits neatly within some preconceived compensatory category.

This Court has taken into careful account each and every objective and subjective factor involved in this case in reaching a fair amount of compensation and in doing so we are compelled to award a lesser amount than that requested by counsel.

First and foremost, in determining what percentage of the settlement amount ought to be awarded as attorney's fees we cannot accept plaintiffs counsels' figure of $5,945,679 as being the settlement amount. Of that amount $769,293.00 was paid in settlement of actions instituted by the New York Attorney General in In the Matter of the State of New York by Louis J. Lef-

kowitz, Attorney General of the State of New York, Petitioner–For an Order Enjoining and Restraining Hotel Waldorf-Astoria Corporation et al., Respondents, 67 Misc.2d 90, 323 N.Y.S.2d 917 (1971). There is some speculation as to whether that action would have met with the same degree of monetary success absent the coordinating and negotiating efforts of plaintiffs' counsel in this case and whether the actions of the Court in that case would have survived appeal but these considerations are no more than that—speculation without concrete foundation and we therefore must discount those factors as being determinative of the settlement amount. The settlement amount must therefore be considered as being $5,176,386.00.

Secondly in reaching a percentage figure counsel utilizes a method whereby the total amount of attorney's fees awarded is added on to the settlement amount going to the class, the sum of these two figures being the total liability of defendants from which the final percentage attributed to attorney's fees is determined.

If for example the attorney's fees were computed at 25% of the settlement sum of $5,945,679, (counsels' figure) the fee would amount to $1,486,424. Defendants' total liability would then be $7,432,121.00. ($5,945,679 to the class plus $1,486,424.00 in fees).

Quite understandably if the $7 million figure is used any amount awarded as attorney's fees would appear to be a much smaller percentage award of the total amount than if the $5 million figure was used. We see no rational reason to use the higher figure as a basis for the award. The settlement agreement clearly states that defendants must pay "Plaintiffs' counsel fees in an amount (not exceeding 30% of the *settlement sum*) set by the Court." The agreement mentions nothing about total liability as a basis for the percentage— only the settlement sum. We find no valid reason to use the higher figure suggested by the plaintiffs' counsel.

A more troublesome problem, however, is encountered in operating with any predetermined contingency fee. This Court does not intend to fall victim to "percentage pitfalls" or what Judge Decker referred to as the Contingent Fee Syndrome. (See *Harper & Row, supra.*) We are not unmindful of the principle that counsel is entitled to a higher measure of compensation when he meets with success in a contingency fee case. Yet adhering to a hard and fast rule of percentages without paying due attention to dollar amounts or rates per hour can produce incongruous and unjust results. The primary consideration ought to be the dollar value to be attributed to per hour of service with percentages governing at the maximum level and being merely advisory at the middle or lower levels. Thus a Court ought to pick a dollar amount per hour and then determine what percentage that equals rather than pick a percentage and then compute the dollar per hour compensation.

Neither do we question the continuing viability of the degree of success obtained through counsel's diligence as the most important factor in determining fees. There is no doubt that plaintiffs' attorneys have met with a certain degree of success in this case, the settlement providing the not insubstantial amount of over $5 million to the class. Yet it is also important to note that only $18,980.03 of that amount represents payments to verified, actually damaged claimants, with the remainder to be credited to future, quite likely oblivious, guests at the rate of 50 cents per occupied room per stay. The argument might be made that the small number of claims is an indicator of great accomplishment in the sense of public interest protection rather than evidence of a less than justified suit. Quite understandably the illegal charges were so small as to make individual suit impossible and victims indifferent and it was mainly through the cohesive class action efforts of counsel that a suit was mounted and

the alleged practices eliminated. Yet this is not a case where the primary beneficiaries of counsels' monetary success are those who were victims of the illegal conduct. It is the hotel patronizing public at large that has derived a minimal but important benefit in the public interest sense and it is in that direction that the total settlement fund will be channeled save a small amount.

In *Harper & Row, supra,* the beneficiaries were public schools and public libraries who were allegedly overcharged for their purchase of hardcover library books. The settlement fund went entirely to the victims of the alleged acts yet Judge Decker felt justified in determining on his own what the attorney's fees ought to be.

This Court is acutely conscious of the great service rendered to the public by attorneys who file class actions to correct practices that would otherwise go unchecked and far be it from this Court to do anything that would discourage the continued service of our most competent attorneys on the public interest battleground.

Yet we are equally conscious of the uniqueness of the class action and the fact that its life is dependent on judicial determination unlike the conventional suit. Judge Decker's discussion in *Harper & Row, supra,* of the proposed changes in the Manual for Complex and Multi-District Litigation issued by the Board of Editors in February 1972 bears repeating. In ruling on attorney's fees the Court ought to consider:

"(1) that in seeking and accepting employment as counsel for a judicially determined class an element of public service is involved; (2) the representation of the class by counsel is not a result of private enterprise but results from provision of an opportunity to represent the class by a judicial determination; and (3) the policy of the law in class actions, including antitrust actions, is to provide a motive to private counsel to represent consumers and to enforce the laws." (Proposed § 1.47 of Manual)

.    .    .    .    .    .

"Once adequate compensation sufficient to provide the motive for representation of classes is provided, no further incentive is required. In this connection, while any fee allowed in the case of a settlement or recovery through litigation may constitute a percentage of the total amount recovered, the reasonableness of the fee arrived at should not rest primarily on the selection of a percentage of the total recovery. Although the results obtained in representing the class should be given consideration as provided in the Code of Professional Responsibility, there should also be an emphasis upon the time and labor required and the effect of the allowance on the public interest and the reputation of the courts. In no event should representation of a judicially determined class be allowed on the same basis as in a contingent fee contract between competent contracting counsel and client." (Proposed § 1.47 of Manual)

Thus we have taken into consideration the uniqueness of the action involved and the public interest element. We are also aware that the case is complex and sprawling in nature requiring a high degree of skill in effectuating a settlement, a degree of skill which was more than adequately demonstrated by counsel in this case. We are also cognizant of the fact that the attorneys involved are of the highest possible standing providing services of the highest caliber conceivable and that 6,238 man-hours represents a great deal of time, effort and expense.

At the same time we are faced with the inescapable fact that we are dealing here with the very tip of the iceberg in regard to the multi-district litigation now pending in California concerning non-settling defendants. No doubt some amount of the work being compensated

for here will serve as foundation for the cases still pending and there exists some overlap between these two sets of cases, an overlap which will be compensated for when the pending cases are resolved.

Finally, plaintiffs' counsel seeks to distinguish this case by asserting that the attorney's fees will not be charged against the settlement amount but rather will be in *addition to* that amount. This they would argue militates for a higher award. The primary consideration, however, is the value of services rendered considering all of the objective guidelines and subjective factors that need be taken into consideration and the fact that the fees will not be charged against the class funds does not in any way increase the value of those services.

Based upon all of the foregoing we find that $152.29 per hour is a fair award of compensation, the total amount awarded for 6,238 hours coming to $950,000.00. This amount is about 18.5% of the net settlement sum of $5,176,386.00.

Counsel will also be awarded $32,328.91 in out-of-pocket expenses.