Charlie W. **POLLARD** et al.,
Plaintiffs,

Carrie Bell Griffin, Plaintiff-
Intervenor,

v.

**UNITED STATES** of America et al.,
Defendants.

Civ. A. No. 4126–N.

United States District Court,
M. D. Alabama, N. D.

Jan. 23, 1976.

Fred D. Gray, Gray, Seay & Langford, Tuskegee, Ala., and Jack Greenberg, James M. Nabrit, III, and Jack Himmelstein, New York City, for plaintiffs.

Cleveland Thornton, Tuskegee, Ala., for plaintiff-intervenor, Carrie Bell Griffin, the members of the plaintiff class on their Tucker Act claims, and certain individual plaintiffs.

Certain individual members of the plaintiff class are represented by Rowan S. Bone, Keener & Cusimano, Gadsden, Ala., Harry D. Raymon, Raymon, Russell, Nathanson & Segrest, Tuskegee, Ala., and T. Dudley Perry, Tuskegee, Ala.

The United States is represented by Ira DeMent, U. S. Atty., and Kenneth E. Vines, Asst. U. S. Atty., Middle District of Alabama, Montgomery, Ala., and Lawrence Klinger, Civ. Div. Dept. of Justice, Washington, D. C.

The defendants State Health Officer of Alabama and the members of the Alabama State Committee of Public Health are represented by William J. Baxley, Atty. Gen., David W. Clark, Asst. Atty. Gen., and James T. Pons, Sp. Asst. Atty. Gen., State of Alabama, Montgomery, Ala. and by Herman H. Hamilton, Jr., and Champ Lyons, Jr., Capell, Howard, Knabe & Cobbs, Montgomery, Ala.

## MEMORANDUM OPINION

JOHNSON, Chief Judge.

This cause is now submitted on the applications for awards of attorneys' fees and expenses presented to the Court by counsel for members of the class in whose behalf this lawsuit was brought, by counsel for the plaintiff-intervenor, and by counsel for certain individual members of the plaintiff class. The appropriate findings of fact and conclusions of law, to the extent material upon said applications for awards of attorneys' fees and expenses, are incorporated in this memorandum opinion as authorized by Rule 52, Federal Rules of Civil Procedure.

As of this date, and based upon a stipulation entered into by counsel for the plaintiffs and the plaintiff-intervenor and the United States, it appears that the total recovery resulting from this action for the members of the plaintiff class that have been located amounts to $9,066,000. This maximum amount has been calculated upon the assumption that each individual judgment heretofore entered in this cause on June 20, 1975, insofar as the plaintiffs who have been located are concerned, will be claimed by a lawful and rightful claimant within the time provided by the stipulation of settlement. In the event that any such judgment is not successfully claimed, the amount thereof will revert, as provided by the stipulation, to the Treasury of the United States. Based upon the terms of the settlement heretofore approved and the assumptions herein enumerated, the total recovery for the members of the plaintiff class that have been located is to be apportioned as follows to each individual judgment:

| Subclass | Number of members of subclass | Amount of individual judgment | Total award to subclass |
|---|---|---|---|
| Living syphilitics | 70 | $37,500 | $2,625,000 |
| Living controls | 46 | 16,000 | 736,000 |
| Deceased syphilitics | 339 | 15,000 | 5,085,000 |
| Deceased controls | 124 | 5,000 | 620,000 |
| TOTALS | 579 | | $9,066,000 |

The United States has heretofore deposited with the Clerk said sum of $9,066,000, and the Clerk has placed same in interest-bearing certificates of deposit in local depositories pursuant to this Court's orders of December 22 and 23, 1975.

Some of the participants in the Tuskegee Syphilis Study—36 "syphilitics" and 8 "controls"—have not as yet been located. By order of this Court of January 23, 1976, the United States was relieved of the obligation to deposit any sum for any person in the "unable to locate" category until such time as the Court enters a final judgment determining the status of said persons (alive or dead) on July 23, 1973, and the existence of heirs who have satisfactorily proved their relationship to the deceased participants so as to be entitled to the proceeds of the settlement. As such persons are located and such judgments are entered, the United States will deposit with the Clerk any amounts that are due.

Counsel for the plaintiffs have submitted evidence to the effect that, during the course of this litigation, they have rendered 7,562.50 lawyer-hours and 355 student-hours of service to the members of the class and have incurred $39,119.29 in necessary costs and expenses. On the basis of these representations, counsel seek an award of the statutory maximum[1] of 25 percent of the total recovery in this lawsuit, plus reimbursement for their out-of-pocket expenses.

In support of their prayer for the statutorily prescribed maximum award, plaintiffs' counsel argue that this case was contingent in nature, involved certain novel questions of law, demanded a high level of skill and expertise of counsel, and produced a generous settlement fund. In addition, numerous practicing attorneys testified as witnesses at the hearing in support of the application filed by counsel, generally advancing the theory that private practitioners undertaking cases of this type would expect to be compensated at a rate no less than, and ordinarily in excess of, 25 percent of the total recovery projected in this case.

At the outset, the Court is confronted with the obvious fact that this action was filed as, and was permitted to proceed as, a class action. Reccgnition of this fact necessarily diminishes the relevance and significance of any evidence relating to attorney fee agreements mutually arrived at by competent, contracting attorneys and clients in individual cases. *Kiser v. Miller*, 364 F.Supp. 1311 (D.D.C.1973); *Manual for Complex Litigation*, § 1.47.

■ Because plaintiffs' counsel rely so heavily upon the nature of this case and the quality of their performance in support of their request for a maximum award, the Court feels compelled to comment on these facets. First, it is quite true that the possibility of ultimate recovery in this case was contingent at the outset, and the Court considers this to be an important determinant of the ultimate award, for, after all, "[n]o one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success." *Cherner v. Transitron Electronic Corporation*, 221 F.Supp. 55, 61 (D.Mass.1963).

■ Second, counsel contend that the case involved certain novel questions of law. It is true that this case presented for decision a number of issues which had either not been treated authoritatively before[2] or which had been treated and decided in a manner found unsatisfactory by this Court.[3] However, for

---

1. 28 U.S.C. § 2678.

2. *E. g.*, the question of whether administrative claims could be filed on a class, rather than an individual, basis. See order of September 10, 1974.

3. *E. g.*, whether fraudulent concealment tolls the applicable statute of limitation in a wrongful death action. See order of October 31, 1974.

counsel to benefit in their fee request by the existence of novel questions of law, it should appear that counsel's treatment of these issues materially assisted the Court in resolving them. This leads, therefore, to counsel's next contention: that they demonstrated a high level of skill and expertise throughout the pendency of this lawsuit.

It is well settled that a trial court, in setting or approving the award of an attorney's fee, is required to assess the quality of the attorney's work product and his general ability before the Court. See *Merola v. Atlantic Richfield Company*, 493 F.2d 292 (3rd Cir. 1974); *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974); *Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corporation*, 487 F.2d 161 (3rd Cir. 1973); *National Council of Community Mental Health Centers, Inc. v. Weinberger*, 387 F.Supp. 991 (D.D.C.1974); *State of Illinois v. Harper & Row Publishers, Inc.*, 55 F.R.D. 221 (N.D.Ill.1972). Counsel in the instant case performed, on the whole, with that degree of competence which the Court expects of all counsel practicing at this bar. That is to say, counsel performed adequately, but no special skill was demonstrated which would warrant increasing the amount of the otherwise reasonable fee which the Court shall award.[4]

Lastly, counsel maintain that they are entitled to the maximum award because their efforts resulted in a large settlement fund for distribution to the class. As noted above, the result of this lawsuit is a fund in excess of $9,000,000 to be distributed to individual claimants in various amounts ranging up to $37,500,

less attorneys' fees and expenses. Knowing as it does the history of this litigation, this Court is impressed that this case was settled for unique reasons that had little, if anything, to do with the quality of the performance of plaintiffs' counsel. Rather, the United States was rightfully and grievously embarrassed at being exposed for having sponsored, financed, and operated a project that for forty years callously experimented with and risked the very lives and health of a large number of unknowing black citizens. It is evident that at this particular time it was in the best interest of the United States Government to close the last chapter of this sordid book as expeditiously and honorably as possible. In the judgment of this Court, it was this motive—and not the expertise of counsel—which created a fund of this size for the settlement of this lawsuit.

Even if counsel are correct, however, in relying upon the size of the fund in support of their request for the maximum award, they disregard the generally accepted principle that the overall percentage of a fee award should be reduced as recovery increases to preclude the allowance of an excessive fee. *National Council of Community Mental Health Centers, Inc. v. Weinberger, supra; Trans World Airlines, Inc. v. Hughes*, 312 F.Supp. 478 (S.D.N.Y.1970), modified and aff'd, 449 F.2d 51 (2nd Cir. 1971), rev'd on other grounds, 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973); *Colson v. Hilton Hotels*, 59 F.R.D. 324 (N.D.Ill.1972), *Milstein v. Werner*, 58 F.R.D. 544 (S.D.N.Y.1973); *State of Illinois v. Harper & Row Publishers, Inc., supra; Winkelman v. General Motors Corporation*, 48 F.Supp. 504 (S.D.N.Y. 1942).

4. Several major issues in this case were dealt with less than adequately by plaintiffs' counsel. For instance, the complaint was filed in this Court prior to any denial of the administrative claim by the Department of Health, Education and Welfare, which clearly deprived the Court of subject matter jurisdiction under the Federal Tort Claims Act, 28 U.S.C. § 2675(a). Additionally, plaintiffs filed suit in behalf of the *heirs* of deceased participants in the Tuskegee Syphilis Study although the Alabama wrongful death statute permits such suits to be brought only by executors or administrators. Ala.Code, tit. 7, § 123.

■ The Court is also unwilling to base its award solely on the number of hours of service rendered by counsel. As the Fifth Circuit recognized in *Weeks v. Southern Bell Telephone and Telegraph Company*, 467 F.2d 95, 98 (1972), "when hours of time become a criterion, economy of time may cease to be a virtue." In this case, for instance, the total hours claimed in lawyers' time alone amount to more than 150 50-hour work weeks—an amount of time which is, indeed, remarkable for a case actively litigated less than 18 months and concluded by settlement rather than by trial.

■ ■ Having considered all of the evidence and arguments, together with its own observation throughout this lawsuit, and the recommendations of the panel of Court-appointed experts,[5] the Court is of the opinion that the attorneys' fees to be awarded in this case should represent a quantum meruit[6] approximation of the value of the services actually rendered to the members of the plaintiff class and those in whose behalf this action was instituted. With that measure in mind, the Court considers a fair, equitable, and reasonable fee to be 12½ percent of the total recovery. "Total recovery," insofar as the claim made by plaintiffs' counsel is concerned, does not include sums deposited to cover judgments the claimants to which have chosen other counsel to represent them.[7] This maximum award is to be composed of pro rata contributions to be deducted from the individual judgments entered in this cause, such contributions to be deducted from each judgment upon its being paid over to the Clerk of this Court by the United States.[8]

Because the professional services which will be required by the claimants have not been fully rendered and will not be completed until the expiration of the claims period, the Court is unwilling to order the immediate payment of this maximum award. Rather, the Court will order the disbursement of the fee in increments as the services for which compensation is being awarded are rendered.

Accordingly, the Court will enter an order forthwith directing the Clerk of this Court to pay over to counsel for the plaintiffs a sum equal to 10 percent of said recovery, for services heretofore rendered to the persons in whose behalf this lawsuit was brought, and reimbursement of $39,119.29 for costs and expenses.

The balance of the maximum award—a sum equal to 2½ percent of said recovery—will be placed in an interest-bearing escrow account. This escrow account will be for two specific purposes. The first purpose is to compensate counsel for future services to be performed in assisting claimants in the presentation of their claims for the settlement pro-

---

5. By Court appointment of June 20, 1975.

6. *Merola v. Atlantic Richfield Company*, supra; *Ratner v. Bakery and Confectionary Workers International Union of America*, 122 U.S.App.D.C. 372, 354 F.2d 504 (1965); *In re Professional Hockey Antitrust Litigation* (Multidistrict Litigation), 371 F.Supp. 742 (E.D.Penn.1974); *Kiser v. Miller*, supra.

7. *E. g.*, Mary McBride, administratrix of the estate of George Crawford, deceased control, and the plaintiff-intervenor, Carrie Bell Griffin, are represented by Hon. Cleveland Thornton; other claimants are represented, respectively, by the law firm of Raymon, Russell, Nathanson & Segrest; by Raymon, Russell, Nathanson & Segrest and Hon. Cleveland Thornton jointly; by Hon. T. Dudley Perry and Hon. Cleveland Thornton jointly, and by Hon. Rowan S. Bone.

8. Assessing the pro rata contribution of each individual judgment at the time it is paid *into* the Court may well result in a contribution which would differ in amount from the pro rata contribution from each claimed judgment that would be calculated at the expiration of the claims period. However, in order to pay each successful claimant upon the presentation of his claim and to compensate counsel as expeditiously as possible, the Court will calculate all contributions from individual judgments as of the date on which the United States paid over such funds to the Clerk of the Court.

ceeds. From time to time, upon satisfactory proof that such services have been performed in a timely, efficient, and professional manner, the Court will direct the Clerk to disburse from the escrow account such sums as represent the appropriate compensation for services actually rendered by plaintiffs' counsel. In the event that such services are not rendered satisfactorily, the amounts held in escrow will be used for the purpose of compensating Court-appointed counsel assisting the claimants in the presentation of their claims.

The second purpose of the escrow account is to compensate plaintiffs' counsel for their efforts in behalf of claimants who hâve not been located as of this date, but to whose benefit this settlement will inure if located within the time provided by the stipulation of settlement. In the event that any individual judgment shall go unclaimed or shall not be claimed successfully for the duration of the claims period, then the pro rata amount of the escrow account attributable to that unclaimed judgment shall revert to the Treasury of the United States.

This Court is fully aware that the attorneys' fee herein awarded does not meet counsel's full request and does not coincide precisely with the recommendations of any experts testifying before the Court. It must be remembered, however, that the Court alone is the protector of the interests of the absent claimants whose substantive interests are here at stake and who are unrepresented except by the very lawyers who are seeking compensation. As Judge Gerhard Gesell wrote in a similar situation:

> The law is not a money-grubbing profession; windfalls should not be given to those who successfully represent persons not properly treated by our Government. Awarding of fees is not intended to accomplish other social purposes, nor is it the function of the

Court to attempt to equalize financial awards for all types of legal work. Some legal fees in the private sector are excessive. It is becoming increasingly expensive to protect the rights of citizens in court. It would be a gross mistake to make the highest level of charges in the private sector a measure of compensation to be paid all attorneys who seek to vindicate an identifiable public interest.

*National Council of Community Mental Health Centers, Inc. v. Weinberger,* 387 F.Supp. at 997.

Several other claims for counsel fees and expenses are also presented to the Court. Hon. Cleveland Thornton seeks an award of counsel fees and expenses for his services in behalf of the plaintiff class. It should be noted that, at the time this lawsuit was commenced and for a considerable time thereafter, Mr. Thornton was employed by the law firm representing the plaintiffs, and he is entitled to no separate award from the Court for his services in behalf of the plaintiffs while so employed. Subsequent to his leaving said employment, he was permitted, by order of the Court of October 1, 1974, to represent the members of the plaintiff class insofar as their Tucker Act claims are concerned. He is, therefore, entitled to an award of counsel fees for his services in this matter. He will be awarded a fee equal to .25 percent of the total recovery, excluding judgments claimed by class members or their representatives who have entered appearances through their own personally selected counsel.[9] He will also be reimbursed for his out-of-pocket expenses in the amount of $737.07. This award of fees and expenses will come from pro rata contributions from the appropriate individual judgments.

Mr. Thornton also represents the plaintiff-intervenor, Carrie Bell Griffin, who is the administratrix of the estate

9. This exclusion, of course, applies to judgments claimed by persons who have retained Mr. Thornton to represent them.

of Colonel Griffin, deceased control, and Mary McBride, administratrix of the estate of George Crawford, deceased control. An attorney's fee of 12½ percent of the principal amount of their recovery will be deducted from any sums recovered by these claimants and paid over to Mr. Thornton. The additional sum of $26.50, to cover Mr. Thornton's out-of-pocket expenses, will be deducted from any recovery by Mary McBride.

The law firm of Raymon, Russell, Nathanson & Segrest represents certain claimants, and this firm and Hon. Cleveland Thornton jointly represent certain claimants. One of the claims for compensation made by Raymon, Russell, Nathanson & Segrest is for their representation of Winnie Mae Slaughter, a daughter of Willie Watt, deceased syphilitic, for whom this firm secured letters of administration on the estate of Willie Watt. No award can be made on this claim since it appears that another daughter of Willie Watt had previously been appointed as the administratrix of his estate. Hon. T. Dudley Perry and Hon. Cleveland Thornton jointly represent certain claimants, and Hon. Rowan S. Bone represents one claimant. Attorneys' fees equal to 12½ percent of the principal amount of any sums recovered by their clients will be deducted from such recovery and paid over to these attorneys. In instances where the representation is joint, the award is joint.

In its claim for attorneys' fees and expenses, the law firm of Raymon, Russell, Nathanson & Segrest seeks to recover certain expenses. This firm will at this time be awarded reimbursement from the recovery of its clients for those expenses set out in its claim that have heretofore been incurred.

The attorneys' fees herein awarded are to constitute the attorneys' exclusive compensation in this lawsuit and preclude any additional remuneration resulting from any previously existing retainer agreements. However, attorneys for the plaintiffs and the plaintiff-intervenor may deduct from the awards to be paid their clients any sums reasonably and necessarily incurred as court costs in connection with the settlement of any estate.

In its order of June 20, 1975, this Court provided that the members of the advisory panel therein appointed would be reimbursed for their actual expenses and would be paid a reasonable fee for their services. Each member of the panel will be awarded a fee of $3,000, plus out-of-pocket expenses. Payment of these fees and expenses and the costs of the transcript, which the Court in its order of June 27, 1975, directed the official court reporter to prepare for the advisory panel, will be made from the special account to be established from interest accruing on the certificates of deposit in which the settlement funds have been invested.