In re PRUDENCE CO., Inc.

Application of CALLAGHAN et al.

Appeal of STEIN.

No. 402.

Circuit Court of Appeals, Second Circuit.

July 18, 1938.

Pollock & Nemerov, of New York City (Joseph Nemerov, Edward A. Rothenberg, and Joseph A. Gluckman, all of New York City, of counsel), for appellant.

Colladay, McGarraghy, Colladay & Wallace, of Washington, D. C. (Edward F. Colladay and Wilton H. Wallace, both of Washington, D. C., Sp. Tax Counsel, and Nathaniel L. Goldstein, of New York City, of counsel), for debtor-appellee.

Delafield, Marsh, Porter & Hope and Root, Clark, Buckner & Ballentine, all of New York City (Eugene Blanc, Jr., and George E. Cleary, both of New York City, of counsel), for creditors-appellees.

Before MANTON, L. HAND, and SWAN, Circuit Judges. .

SWAN, Circuit Judge.

This is an appeal from an order approving a compromise for $400,000 in cash of claims of the United States for income taxes for the years 1923 to 1936, inclusive, against the debtor in reorganization, and its subsidiaries. The amount of the tax claims, with interest to May 15, 1937, in round figures is $1,110,000. The debtor's trustees were authorized to employ special tax counsel, who made an intensive study of the claims. Their negotiations with tax officials of the government resulted in an offer to compromise the claims for $475,000, and they recommended to the trustees that the compromise be made. Thereupon the trustees, upon notice to creditors and intervenors, petitioned the district court for instructions. The appellant, Bertha Stein, a creditor who had intervened in the reorganization proceedings, filed an answer opposing the compromise. Testimony was taken upon numerous hearings. Before decision by the court, the offer of compromise was reduced to $400,000. Creditors representing claims against the debtor of many millions of dollars indicated their approval of the proposed settlement; the appellant's claim is for $10,000. On May 5, 1938, the district court ordered the trustees to make the settlement, but stayed payment thereunder pending appeal.

It is conceded, as it must be under the authorities, that the approval of a compromise of a claim against a bankrupt's estate is a discretionary order which can be reversed only for an abuse of discretion. In re Riggi Bros. Co., 2 Cir., 42 F.2d 174; Pullman Couch Co. v. Eshelman, 4 Cir., 1 F.2d 885; Petition of Stuart, 6 Cir., 272 F. 938. The appellant contends that discretion was abused, because the government's tax claim is invalid as a matter of law and a correct application of the law would not only wipe out the asserted deficiency but entitle the debtor's estate to a refund of

taxes erroneously overpaid. The case has been presented as though the tax claims involve but a single issue relating to bonuses, called "commissions", paid in the manner hereinafter stated by borrowers to whom the debtor made loans during the years in question. The appellees, however, assert that the pending tax claims involve sixty-four different issues, and that the issue as to "commissions" covers only about $500,000 of the claimed deficiency of $1,110,000. Even if we assume with the appellant that tax claims for the years 1931 and 1932 can be successfully resisted, there will remain disputed taxes of more than $200,000 which involve questions other than the "commission" issue. It is obvious that the existence of these other issues, the contest of which would necessarily be expensive and protracted, even if successful, is relevant to a determination of the wisdom of the compromise approved by the court. Nevertheless, for purposes of decision, we will assume that the result on appeal should turn solely on whether the non-taxability of "commissions" is so clear as to make the compromise improvident. This is the appellant's contention.

During the taxable years in question The Prudence Company made loans secured by mortgages upon real estate. Part of the mortgage loans thus acquired were sold direct to the public, coupled with the Company's guaranty. Part of the mortgage loans were assigned to Prudence Bonds Corporation in exchange for participation certificates therein or for bonds secured by a pledge of the assigned mortgages, and such participation certificates and bonds were then sold by The Prudence Company, accompanied by its guaranty. A relatively small number of the mortgage loans were never disposed of by the Company. When the Company made a mortgage loan, its practice was to exact from the borrower a bonus or "commission". The amount of the bonus varied with the duration of the loan and the character of the mortgage security; usually it was about five per cent of the face amount of the loan. The customary procedure was for the Company to draw two checks payable to the borrower, one for the amount of the bonus and one for the face amount of the bond and mortgage less the bonus; the check for the bonus was forthwith endorsed back to the Company and deposited in its bank account. The effect of this practice was that in return for about 95 per cent. of the face amount of the agreed loan, the borrower promised to pay the face amount thereof, with interest thereon. The books of the Company were kept on the accrual basis, but during the years 1923 to 1930 it did not treat the bonuses as income realized when the loans were made. The government has asserted that on the accrual basis income was earned as soon as the borrower became unconditionally bound to pay the bonus or "commission", i. e., on delivery to the Company of the borrower's bond and mortgage; and the appellees adopt this argument for the purpose of supporting the wisdom of the settlement. The appellant, on the other hand, contends (1) that the "commission" on a loan is not taxable as income until it is realized by repayment of the mortgage loan, or by a sale thereof; and (2) that, at the worst, the "commission" must be spread over the life of the mortgage, since in reality it is compensation agreed to be paid by the borrower, in addition to interest, for use of the money. The appellant also contends that, since the Company's guaranty accompanied the mortgages, participation certificates and bonds that it "sold" to the public, such transactions were in substance not sales but borrowings of money from the purchasers.

The district court did not determine the validity of the government's claim with respect to the taxability of the "commissions"; nor need this court do so. The very purpose of a compromise is to avoid the determination of sharply contested and dubious issues, as this court pointed out in the case of In re Riggi Bros. Co., 2 Cir., 42 F.2d 174, 176. Hence, to succeed upon this appeal the appellant must show, assuming there are no issues of fact in dispute, that the rules of law for which she is contending are so clearly correct that it was an abuse of discretion for the district court to approve the settlement, since such approval presupposes some probability of validity in the government's tax claim. In the present state of the law it cannot be shown that the tax claim based on "commissions" was clearly invalid. The cases most nearly in point appear to support the government's position. Columbia State Savings Bank v. Commissioner, 7 Cir., 41 F.2d 923; Bonded Mortgage Company v. Commissioner, 4 Cir., 70 F.2d 341. The appellant's attempts to distinguish these cases from the facts at bar do no more than show that the question is not free from doubt; and the authorities cited for the proposition that the

"commissions" do not constitute realized taxable income when the loans were closed, cannot be deemed controllingly persuasive, since in all of them the taxpayers kept their books on a cash basis. See Blair v. First Trust & Savings Bank, 5 Cir., 39 F.2d 462; Helvering v. Martin-Stubblefield, Inc., 8 Cir., 71 F.2d 944; Commissioner v. Central Republic Trust Co., 7 Cir., 75 F.2d 708. Moreover, a technical adviser in the bureau of internal revenue testified that it had been the unbroken practice of the bureau to tax as income in the year when a loan is closed the fees or commissions charged by the lender for making it. A ruling to this effect by the solicitor of internal revenue was announced in 1925. S. M. 3820, C.B. IV—2, p. 32. Although that ruling has been reversed in respect to taxpayers who report upon a basis of cash receipts and disbursements, it still stands with regard to those who use the accrual method of accounting.

If, despite the contrary practice of the bureau and the foregoing authorities apparently supporting the government's claim, we should accept the appellant's contention that the "commissions" represent nothing but additional compensation for the use of the money loaned and are not realized by the lender until the mortgage loan is paid off or is sold for more than the sum advanced to the borrower, other questions arise; namely, whether the "commissions," like a discount, are not to be spread over the life of the loan, since the lender was on the accrual basis of accounting, and whether they were not realized in full by the Company upon selling the mortgages, or the Prudence-Bonds participation certificates or bonds for which assigned mortgages had been exchanged. Assuming that such sales were made at par or better, there could be no doubt that the commissions were then realized, if the transactions were actual sales. The contention that, although in form sales, in substance they were borrowings of money because of the Company's guaranty, would seem to run counter to our decision in Re The Westover, 2 Cir., 82 F.2d 177. At least this is enough to show that the appellant's contention presents a dubious question.

As the foregoing discussion indicates, the most that the appellant has succeeded in doing is to raise some doubt as to the taxability of the "commissions." With a full realization of the perplexities of the legal problems presented and of the expense and delay inevitably resulting if they be litigated, with a recommendation by expert tax counsel who had thoroughly studied the questions, and with the approval of an overwhelming majority of the creditors, the district judge authorized the settlement. Under such circumstances we cannot say that in so doing he abused the discretion vested in him by the Bankruptcy Act, 11 U.S.C.A. § 1 et seq.

Order affirmed.