**C. Robert YOUNG et al., Plaintiffs-Appellees,**

**National Bankers Life Insurance Co., et al., Defendants-Appellees,**

**v.**

**Lawrence G. KATZ et al., Movants-Appellants.**

**No. 30373.**

United States Court of Appeals, Fifth Circuit.

June 3, 1971.

Rehearing Denied and Rehearing En Banc Denied Aug. 27, 1971.

Philip A. Masquelette, Houston, Tex., for L. Katz and Norman Ross.

Lewis F. Pennock, Ben H. Schleider, Jr., Houston, Tex., for Annie Katz and Maurice Krupp; Dillingham & Schleider, Houston, Tex., of counsel.

Kleber Miller, Fort Worth, Tex., for appellees Bagg and Turnbow.

William P. Fonville, Dallas, Tex., for appellee Paul Cook.

Frank Briscoe, Houston, Tex., for appellee W. D. Haden, II.

Frank G. Newman, Rodney D. Moore, Newman, Moore, Peterson & Frazer, Dallas, Tex., for appellees, C. Robert Young, H. W. G. Bishop, Johnny Wright and Houston L. Goodspeed.

Gaynor Kendall, Kendall, Koch, Randel, Finch & Osborn, Austin, Tex., for appellees, Frank W. Sharp, Sharpstown Realty Co. and Sharpstown State Bank.

E. Eugene Palmer, Carr, Osorio, Palmer, Dickson, Long & Coleman, Austin, Tex., for appellee, National Bankers Life Ins. Co.

Jerry G. Hill, Pinedo & Hill, Houston, Tex., for appellees, Olympic Life Ins. Co., Tom W. Arnold, W. H. Hinton, M. K. Peterson, C. A. Pickett, Joe B. Ridings, B. F. Clifton, Fausto Yturria, Jr., Carl Meek and Allan Wolk.

Before COLEMAN, SIMPSON, and RONEY, Circuit Judges.

COLEMAN, Circuit Judge.

In April, 1968, Frank W. Sharp acquired 54 percent of the stock of National Bankers Life Insurance Company of Dallas, Texas. About the same time, W. D. Haden, Sharp's son-in-law, obtained 54 percent of the stock of Olympic Life Insurance Company of Fort Worth, Texas.

In September, 1969, Olympic announced a proposal to merge with National Bankers Life. Security holders of Olympic were offered an opportunity to exchange their holdings for those of National Bankers Life.

On December 30, 1969, Olympic shareholders approved the proposed merger. The attorney for Messrs. Katz and Ross, appellants in the case now before us, appeared at the stockholders' meeting and objected to the merger, relying chiefly on Rule 10b–5 of the Securities and Exchange Commission, 17 C.F.R. 240.10b–5.

On February 12, 1970, Young, Bishop, Wright, and Goodspeed, dissatisfied Olympic stockholders and option holders, filed this class action in an attempt to halt the proposed merger.

On February 19, 1970, counsel for Katz and Ross stated to counsel for the active plaintiffs that he did not wish to participate or intervene.

Subsequently, the active plaintiffs in the class action arrived at a settlement or compromise agreement with the directors of both insurance companies, providing, in effect, for the abandonment of the merger.

March 2, 1970, by appropriate corporate resolutions, both companies cancelled the merger.

Upon petition for the approval of the settlement, in conformity with Rule 23 (c) of the Federal Rules of Civil Procedure, the District Court ordered a hearing and directed that notice be mailed to all stockholders and option holders of Olympic, giving them an opportunity to appear and be heard. An exact copy of the proposed compromise and settlement was attached to the notices.

As of hearing date, June 12, 1970, Olympic had 2,575 stockholders and 750 option holders. Of these, four (Katz, Ross, Mrs. Katz, and Krupp) appeared by counsel in opposition to the approval of the compromise agreement. Only three stockholders, owning 326 shares and 41 options, had previously filed written notice of their desire not to be bound by the settlement.

The compromise was approved, this appeal followed, and we affirm the judgment of the District Court.

■ The paramount issue is whether the trial court clearly abused its discretion in approving the settlement, State of West Virginia v. Charles Pfizer & Company, Inc., 2 Cir., 1971, 440 F.2d 1079.

We think the controlling law was well expounded in Neuwirth v. Allen (S.D., N.Y., 1964), a case not reported in the Federal Supplement, but affirmed, 2

Cir., 1964, 338 F.2d 2. It was there stated:

"In examining a proposed compromise for approval or disapproval under Fed. R.Civ.P. 23(c) the court does not try the case. The very purpose of compromise is to avoid the delay and expense of such a trial. The court seeks only the answers to two inquiries: (a) whether there is any fraud or collusion in arriving at the compromise and (b) whether the compromise is fair, adequate and reasonable, or, to use an alternative formulation, whether it is for the best interests of the corporation whose claims are being given up.

"Among the authorities examined and which lay down the principles just summarized are the following: Masterson v. Pergament, 203 F.2d 315 (6th Cir. 1953); Cohen v. Young, 127 F.2d 721 (6th Cir. 1942); In re Prudence Co., 98 F.2d 559 (2d Cir. 1938); In re Riggi Bros. Co., 42 F.2d 174 (2d Cir. 1930); Winkelman v. General Motors Corporation, 48 F.Supp. 490 (S.D.N.Y.1942); Gladstone v. Bennett [38 Del.Ch. 391], 153 A.2d 577 (Sup.Ct.Del.1952); Mann v. Luke, 82 N.Y.S.2d 725 (Sup.Ct.N.Y. Co.1948); Shielcrawt v. Moffett, 59 N.Y.S.2d 619 (Sup.Ct.N.Y.Co.1945); Bysheim v. Miranda, 44 N.Y.S.2d 15 (Sup. Ct.N.Y.Co.1943).

"Some of the expressions by these authorities are as follows:

'It is certain that litigation for that purpose would have been the inevitable result of a failure to compromise and equally certain that it would have made for delay and expense. This should be kept in mind in reviewing the approval of the compromise. * * * Coupled with the certainty of litigation was the uncertainty of its result and the soundness of the exercise of discretion in approving it largely depends upon how substantial was this element of uncertainty. The action of the District Court is presumptively right, and will not be set aside unless clearly shown to have been wrong. * * * Consequently, we shall make no attempt to decide with exactness what would have been the outcome had no settlement been made and approved. Any virtue which may reside in a compromise is based on doing away with the effect of such a decision. For present purposes it is enough to consider only what was reasonably to be expected to happen had no agreement been made. (In re Riggi Bros. Co., above, [42 F.2d] at 176).

'A settlement is the result of a compromise and in effecting a compromise each of the parties expects to make some surrender, in order to prevent unprofitable litigation, effect upon its credit, the wasting of time on the part of its officers that should be devoted to the success of its enterprise and, so, compromises are generally approved by the courts. (Masterson v. Pergament, above, [203 F.2d] at 330).

'It is not necessary in order to determine whether an agreement of settlement and compromise shall be approved that the court try the case which is before it for settlement. * * Such procedure would emasculate the very purpose for which settlements are made. The court is only called upon to consider and weigh the nature of the claim, the possible defenses, the situation of the parties, and exercise business judgment in determining whether the proposed settlement is reasonable. (Gladstone v. Bennett, above, [153 A.2d] at 583).

'In weighing the benefits held forth by the agreement of settlement against benefits dependent on the likelihood of recovery upon the plaintiffs' cause of action, the courts cannot be expected to balance the scales with the nicety of an apothecary. The very object of a compromise 'is to avoid the determination of sharply contested and dubious issues'. In re Prudence Co., 2 Cir., 98 F.2d 559, 560, certiorari denied [Stein v. McGrath] 306 U.S. 636, 50 [59] S.

Ct. 485, 83 L.Ed. 1037. However, the facts and the law must be considered carefully and fully, to the end that a true appraisal be made of the plaintiff's chances of success upon the issues presented, and a correlative conclusion drawn as to the fairness and reasonableness of the proposed compromise.' (Shielcrawt v. Moffett, above, [59 N.Y.S.2d at 621)."

At the hearing, counsel for the active plaintiffs testified under oath in support of the compromise. His testimony was not contradicted in any material particular.

That testimony may be summarized as follows:

The suit was filed for the purpose of blocking the merger. Relief was sought in the form of an injunction against the merger and for damages. The settlement, as agreed to in final written form on April 22, 1970, provided that Olympic may not be merged with National Bankers Life or any of the other defendants or any affiliate or subsidiary at any time within the ensuing five years, except upon a rate of exchange not less favorable to the Olympic shareholders than as determined by independent consulting actuaries, based on a current study of the adjusted book values of the two companies. The contractual rights of the option holders of Olympic would be recognized. The various defendants to the suit would pay plaintiffs' attorney fees in a fixed amount, subject to the approval of the court. Olympic would withdraw its deposits in a certain bank (which subsequently failed) in the sum of $2,600,000.[1]

In the opinion of counsel, an experienced insurance attorney whose qualifications were not questioned, the settlement was fair.

As to damages, counsel stated, "we have not been able to find anything in the way of damages that we feel we could prove". As to the other items alleged in the original complaint, counsel very thoroughly explained the reasons for relinquishing pursuit of those issues. In the absence of evidence to the contrary, we perceive nothing unreasonable as to the decision to abandon these contentions.

In sum, the evidence on behalf of the active plaintiffs clearly established the reasonableness of the settlement. The evidence offered on behalf of the ob-

[1.] On February 24, 1971, the Federal Deposit Insurance Corporation filed the following in this Court:

Comes now Federal Deposit Insurance Corporation, Receiver of Sharpstown State Bank, Houston, Texas, and would make known to the Court the following:

1. Since the commencement of this cause and the filing of the briefs herein, to-wit: On January 25, 1971, the Directors of Sharpstown State Bank, a banking corporation organized and existing under the laws of the State of Texas, with its banking quarters in Houston, Texas, a Defendant-Appellee herein, placed it in the hands of the Banking Commissioner of the State of Texas for liquidation pursuant to Art. 342–801 et seq., Vernon's Annotated Civil Statutes of Texas, and on January 27, 1971, pursuant to Art. 489b, V.A.C.S., the Banking Commissioner of Texas tendered to Federal Deposit Insurance Corporation appointment as Receiver of the bank and Federal Deposit Insurance Corporation accepted such appointment. Therefore, Federal Deposit Insurance Corporation is now the duly designated and acting Receiver of the said bank and by virtue of Art. 489b, V.A.C.S., does have and possess all powers and privileges provided by the laws of the State of Texas with respect to a receiver of a banking institution, its depositors and other creditors, and is subject to all the duties of such Receiver, including the protection of the interests of the depositors and creditors of the bank.

2. Having reviewed the record and briefs herein, it appears to Federal Deposit Insurance Corporation, Receiver, that the settlement attacked by Movants-Appellants here is fair and equitable and to the best interests of the depositors and creditors of Sharpstown State Bank, and therefore, it adopts the basic position of the original Appellees herein and the argument and authorities there set forth, and urges that the action of the trial court in approving the settlement agreement and denying Movants' Motions be in all things affirmed.

jectors raised nothing of substance to the contrary. In fact, the objectors dealt only with suggested possibilities, supported by no real prospect of ultimate success. Thus, applying the principles discussed *supra*, no abuse of discretion in the approval of this settlement is shown. The judgment of the District Court is entitled to be affirmed.

The objector-appellants offered numerous motions designed to thwart the settlement and prolong the litigation. In light of the foregoing, we find these motions to have been without merit and that their denial was correct.

■ Appellant points to a procedural defect in the judgment approving the settlement, in that it did not include and specify or describe those to whom the notices were directed and who had not requested exclusion, and whom the court found to be members of the class, bound by the settlement, as required by Rule 23(c), Federal Rules of Civil Procedure. This seems to have been an inadvertence, unnoticed, and not raised, below. It will be easy to remedy, for which the case will be remanded.

The Judgment of the District Court, approving the settlement at issue, is affirmed and the case will be remanded for the correction of the omissions alluded to in the next preceding paragraph.

Affirmed and remanded.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

### PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.