**Lloyd R. HILL, Individually and as representative under Federal Rule of Civil Procedure 23 of all persons, firms and corporations that have paid a commission or fee to defendants for bringing together buyers and sellers of real estate in the Greater Birmingham Area, Plaintiffs,**

v.

**ART RICE REALTY CO., a corporation, et al., Defendants.**

**Civ. A. No. 72–1041.**

United States District Court,
N. D. Alabama, S. D.

May 9, 1974.

James L. Shores, Jr., Johnston & Shores, Birmingham, Ala., for plaintiff.

Robert R. Feagin, III, and George L. Varnadoe, Holland & Knight, Tallahassee, Fla., for Allan B. and Doris M. Franklin who intend to object.

James L. North, Johnson, North, Haskell & Slaughter, Birmingham, Ala., for plaintiffs.

W. B. Hairston, Engel & Hairston, Birmingham, Ala., for Waters Realty.

William T. Courson, Secretary-Treasurer, Dearborn Realty Co., Birmingham, Ala., for Dearborn Realty Co.

Alan W. Heldman, Johnston, Barton, Proctor, Swedlaw & Naff, Birmingham, Ala., for Engel Realty Co., Leedy & Co.

W. Alan Summers, Birmingham, Ala., for Clyde Turner.

James E. Simpson, Lange, Simpson, Robinson & Somerville, Birmingham, Ala., for Tanner & Co., Inc., Sunny Realty Co., Inc., The Shook Company Realtors, a corp., Russell Realty Corp., The Rudolph Co., Inc., Paden Realty Co., Montgomery Real Estate & Ins. Co., Molton, Allen & Williams, Jemison Realty Co., Heritage Realty Co. Inc., Durham Ellis Co. Inc., Donald Real Estate & Ins. Co., Davis & Major, Inc., Cobbs, Allen & Hall Mortgage Co., Emmett W. Cloud, Chap Hodges Realty, Inc., Butler-Rocket Real Estate & Ins. Co., J. H. Berry Real-

452

ty Co., Inc., Art Rice Realty Co., Sam Bennett Realty & Dev., Shepard Realty Co. Inc.

Charles Cleveland, Gordon & Cleveland, Birmingham, Ala., for Belview Real Estate Co., Inc., Caffee Realty Co., Perkins Realty Co., Inc., James A. Sconyers d/b/a Sconyers d/b/a Sconyers Realty Co., Scott-Long Ins. & Realty, Nancy Schilling Realty Co.

J. Fred Powell, Thomas, Taliaferro, Forman, Burr & Murray, Birmingham, Ala., for Ralph Sanderson Co., Inc.

Walter Fletcher, William M. Acker, Jr., Dominick, Fletcher, Yeilding, Dominick & Acker, Birmingham, Ala., for Stapleton Realty Co., Inc., Realty Brokers, Inc., The Byrd Companies, Inc., R. A. Brown Real Estate, Inc., Baker & Billings Real Estate, Inc.

Dale Corley, Skinner, Large & Corley, Birmingham, Ala., for Shields Realty, Inc. & Atkins-Trimm Realty Co.

James A. Harris, Jr., Sirote, Permutt, Friend & Friedman, Birmingham, Ala., for Metropolitan Properties.

Eddie Leitman, Berkowitz, Lefkovits & Patrick, Birmingham, Ala., for Leitman-Perlman Agency.

Foster Etheredge, Spain, Gillon, Riley, Tate & Ansley, Birmingham, Ala., for Johnson-Rast & Hays Co.

Drayton T. Scott, Cabaniss, Johnston, Gardner & Clerk, Birmingham, Ala., for Ford, Myatt & Ebaugh, Inc.

Charles A. J. Beavers, Robert D. Norman, Norman & Fitzpatrick, Birmingham, Ala., for Viva Chumbler R. E. Co., Ola Tucker, James T. Johnson, K. Stella Brown.

Donald L. Newsom, Douglas P. Corretti, Corretti, Newsom, Rogers & May, and James P. Alexander, John H. Morrow, Bradley, Arant, Rose & White, Birmingham, Ala., for Birmingham Bd. of Realtors, Inc.

Acie Avery, pro se.

MEMORANDUM DECISION

GROOMS, District Judge.

On January 25, 1974 there was filed herein an Agreement of Settlement Subject to Court Approval and to Proposed Notice under Rule 23, F.R.C.P. On the same day the Court entered its Order on Rule 23, Class Action Determination and on Motion for Conditional Approval of Settlement. Among other things the January 25, 1974 Order determined the class on behalf of which this action was maintained; gave conditional approval to the proposed settlement of this action; and specified the notice to be given to the class.

On April 19, 1974 this matter came on for hearing for final consideration of the proposed final judgment in this action pursuant to the notice to the class. The court having considered the evidence there presented, including the affidavit submitted on behalf of the objectors, the affidavits submitted on behalf of the plaintiff and on behalf of the defendants, the pleadings and other matters of record in this case including, interrogatories and answers thereto, responses of members of the class to the notice of the hearing and the affidavit of Hardeman Meade filed subsequent to the hearing, and the arguments of counsel, including the brief of the objectors submitted on April 29, 1974, and the court having given those in attendance at the hearing an opportunity to be heard, the court enters this memorandum decision which includes its Finding of Facts and Conclusions of Law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

One objection to the proposed settlement has been filed on behalf of Alan B. Franklin and Doris M. Franklin, husband and wife and joint-sellers of property who paid a real estate sales commission in June 1971.

## I. NOTICE AND CLASS DESCRIPTION

The court finds that individual notice of the pendency of the action, of

the conditional approval of settlement and of the hearing for consideration of final approval of the proposed settlement was timely given to all members of the class who could be identified through reasonable effort, that the best notice practicable under the circumstances has been given, and that the notice given complies with the requirements of due process. The court finds that such of the notices as were mailed after March 1, 1974, including the Supplemental Notice provided for by the court's order of March 14, 1974 were timely mailed and the court's order of January 25, 1974 fixing the time for the mailing of notice is due to be amended accordingly.

█ The court finds that action is properly maintainable as a Rule 23(b)(3) class action and that the members of the class are:

"All persons, companies, corporations or entities who have paid a commission or fee in connection with the sale, rental, lease or management of real estate in Jefferson County, Alabama, in the period November 21, 1968 to September 30, 1973, inclusive", except that, there shall be excluded from the class all persons or entities who have, heretofore requested exclusion from the class and whose names are set forth on the clerk's docket sheet for this action.

## II. THE QUESTION OF REASONABLENESS

There are two primary issues presented for determination as noted by the Fifth Circuit Court of Appeals in Young v. Katz, 447 F.2d 431 (1971):

"In examining a proposed compromise for approval or disapproval under Fed.R.Civ.P. 23(c) the court does not try the case. The very purpose of compromise is to avoid the delay and expense of such a trial. The court seeks only the answers to two inquiries: (a) whether there is any fraud or collusion in arriving at the compromise and (b) whether the compromise is fair, adequate and reasonable . . . ."

The two objectors make no real suggestion that the settlement is a collusive or fraudulent one, and from the evidence presented and the court's familiarity with the case, the court is satisfied and finds that it is not.

█ The two objectors, through written objections to the proposed settlement through counsel appearing at the hearing, and through their Memorandum of Law do strenuously insist that the proposed settlement is not fair, adequate, and reasonable. On this issue the burden is on the proponents of the settlement to satisfy the court that it is.

█ It is at once obvious, and the focal point of the objection, that no monetary damages are being paid to the members of the class under the proposed settlement. It does not follow as a matter of course, that money must be paid to make every settlement a reasonable one. Injunctive relief, patterned upon the relief obtained by the United States of America in civil suits against real estate boards such as United States v. Memphis Board of Realtors, CCH 1972 Trade Cases ¶ 74,056 (W.D.Tenn.1972) and United States v. Atlanta Real Estate Board, CCH 1972 Trade Cases ¶ 73,787 (N.D.Ga.1972) is proposed under the consent decree. The injunctions entered in those cases have been broadened in the proposed decree to require that all contract forms affirmatively show in conspicuous print that the rate of commission to be charged in connection with the sale of real estate is a matter to be determined by negotiation between the real estate agent and the party paying a commission. The court is aware that we live in a mobile society and that many members of the class, who have sold real

estate, have used the proceeds of sale to acquire other real estate. The court also knows that large numbers of the class still live in Jefferson County and will again be selling real estate or paying a commission on the sale of real estate. These members will benefit from the injunctive provisions of the proposed decree.

■ If the court were satisfied, however, that there was a certainty or substantial probability of success of an effort to recover monetary damages on behalf of the class, the indirect benefit to be gained by the existence of the injunction would not, standing alone, be sufficient to render the proposed settlement reasonable and fair. Consideration of any proposed settlement requires an evaluation of the certainty or likelihood of success if the matter is litigated to conclusion and of the benefit to be gained by the members of the class by successful litigation. Florida Trailer and Equipment Co. v. Deal (5 Cir. 1970), 284 F.2d 567, United Founders Life Ins. Co. v. Consumers Nat. Life Ins. Co. (7 Cir. 1971), 447 F.2d 647. The court must make such a determination without a trial of the merits of the case which would emasculate the very purposes of settlement. Young v. Katz, *supra*.

■■ Within this framework, it is clear and the court finds that there are serious obstacles in the way of the recovery of monetary damages by the plaintiff. At the outset to prove his Section 1, Sherman Act allegations, the plaintiff must, of course, show that the conduct claimed to be unlawful restrained *"trade or commerce among the several States"*, presenting a commerce question in this action which alleges a conspiracy to fix commission rates charged in connection with the sale of real estate. On three separate occasions, courts have considered whether the conduct of defendant Real Estate Boards or

their members, which is alleged to be violative of Section 1 of the Sherman Act, sufficiently restrains interstate commerce to vest the court with subject matter jurisdiction to entertain a Sherman Act claim. Marston v. Ann Arbor Property Management Assoc., 302 F. Supp. 1276 (E.D.Mich.1964), aff'd, 422 F.2d 836 (6th Cir. 1970); Cotillion Club, Inc. v. Detroit Real Estate Board, 303 F.Supp. 850 (E.D.Mich.1964); Royal Realty & Investments, Inc. v. Oklahoma City Metropolitan Board of Realtors, Inc. (W.D.Okl.1973) Civ. Action 73-116-B. On each occasion, conduct of the defendant real estate boards or real estate brokers was held not to have adequate effect on interstate commerce to permit such action to proceed. Dictum of the Supreme Court of the United States in United States v. National Association of Real Estate Boards, 339 U. S. 485, 70 S.Ct. 711, 94 L.Ed. 1007 (S.C. 1949) with respect to the same type of activity in the District of Columbia supports the same conclusion. Considering it neither necessary nor appropriate to reach a definitive conclusion on the commerce question on this hearing, the court does find that it presents a serious question upon which defendants' side of the issue has strong support in the cases. If, of course, the defendants should prevail on such issue, plaintiffs would be deprived of the injunctive relief provided by the proposed decree.

Assuming a favorable ruling on the commerce question, there are other issues which must be considered in evaluating the probability of recovery. Although it is undisputed that until a time in August of 1970, the Birmingham Board of Realtors, Inc. did maintain in effect a recommended commission schedule, it does not automatically follow that each defendant is a member of a conspiracy or combination to fix real estate commissions. The affidavits of several defendant brokers, reflecting the charging of commissions at rates substantially

at variance with the recommended rates, show that jury issues will be presented whether these defendants were members of such alleged conspiracy. Although, assuming commerce, a maintenance of a recommended fee schedule would be violative of Section 1 of the Sherman Act, whether a particular defendant was a party to a combination or conspiracy to maintain such a schedule is a factual question for jury resolution. Based upon the evidence before me, I am satisfied and so find that a number of the defendants have a reasonable chance of prevailing on this issue on a jury trial.

If everyone shared equally the ability to predict accurately the outcome of a jury trial, there would be few, if any, trials. Defendants insist that the nature of conduct attributed to them and charged to be wrongful has a bearing upon an evaluation of the plaintiff's chances of success. They argue that where defendant's conduct is well known, widely publicized, and carried on in the community for many years without complaint or criticism, the jury will be responsive to their arguments and their side of the case and more likely to favor them with a verdict than the plaintiff. There is no suggestion here that the defendants have engaged in a secret, concealed or otherwise reprehensible conspiracy, the very existence of which might carry the case for the plaintiff on other issues. Objectors argue that the court must instruct the jury that maintenance of a fee schedule is wrongful *per se,* but the *per se* rule does not mean the court can decide for the jury who was a party to the combination or conspiracy. I am satisfied that the nature and quality of a defendant's action does have a bearing upon the outcome of a jury trial and that the existence and long standing of the challenged conduct does constitute a favorable factor for the defendants in the evaluation of the probable outcome of a trial.

Looking to the issue of recoverable damage should plaintiffs prevail, the most significant evidence before the court is contained in the affidavits of Walter Askew and P. M. Boyer. They come from an official of the Memphis Board of Realtors, and a member broker of the Atlanta Board of Realtors. In both Atlanta and Memphis, consent decrees prohibiting the maintenance of any recommended fee schedules were entered as a result of injunctive proceedings brought by the United States of America. These affidavits reflect that the impact of the rescission of fee schedules on commission rates has been in the opposite direction from what plaintiff insists in his suit, with the rates going up rather than down after the claimed "conspiracy" had been ended by government action. Proof of damage being an essential element of plantiffs' monetary claim, plaintiffs must be able to establish on the trial that defendants' conduct damaged them by causing them to pay more commission than they would have had to pay in an "unrestrained" market. Although the affidavits could not establish conclusively at this hearing that no damages would be recoverable on a full trial of the case, they present the only direct evidence bearing upon the damage question and do clearly suggest that a resolution of all other issues in favor of the plaintiff might well result in a finding of no damage to the plaintiff, or to his class. Any showing of damage would require plaintiffs to show that each of them could have negotiated a lower rate of commission or that the prevailing rate after the wrongful conduct had terminated was lower. Comparing prices during and after an alleged conspiracy is an accepted way of establishing damages in a pricefixing case. Ohio Valley Electric Corp. v. General Electric Co., 244 F.Supp. 914 (S.D. N.Y.1965). Applying this approach in this case on the basis of the evidence before me would mean that no damages

would be recoverable. I am satisfied that the damage issue presents a real problem for the plaintiff in this case and that this problem gives significant support to the reasonableness and fairness of the proposed settlement.

■ In considering the fairness of a settlement, the attitude of the people whose interests will be effected should of course, be taken into consideration. Ladd v. Brickley (1 Cir. 1946), 158 F.2d 212; Glicken v. Bradford, 35 F.R.D. 144 (S.D.N.Y.1964). I have reviewed the numerous responses to the notice mailed to members of the class. There is only one, the objection from Mr. and Mrs. Franklin of Tallahassee, Florida, who appeared through counsel at the hearing on Friday, April 19, 1974. Mrs. Franklin is a legal secretary in the firm of counsel who made the objection on her behalf. In excess of 25,000 notices of the hearing were sent with the notice being published in the two most widely circulated newspapers in Jefferson County in a total of five (5) separate newspaper editions. That there is only one objection is compelling evidence that the attitude of the overwhelming percentage of the class effected by the settlement does not oppose the settlement. The attitude of the class thus supports the reasonableness and appropriateness of the proposed settlement.

■ The opinion of Counsel who have conducted the litigation with respect to the question of settlement is entitled, of course, to some weight. Fielding v. Allen, (S.D.N.Y.1951), 99 F.Supp. 137, 144; Berger v. Dyson (D.R.I.1951), 111 F.Supp. 533. Counsel for plaintiff and all defendants recommend the proposed settlement.

■ The proponents of the settlement do not have the burden of establishing to a certainty that plaintiffs will fail to recover. This is not the test on the hearing for approval. Florida Trailer and Equipment Co. v. Deal, *supra.* I am satisfied that proponents have met their burden of showing that the likelihood of success is not so great that the settlement should be disapproved because it does not include an award of damages to the class. Mindful of the obligation to absent members of the class imposed by proceedings under Rule 23, the court finds that the proposed settlement is fair, reasonable and adequate and that it is due to be approved.

### III. OBJECTORS POST HEARING MOTIONS—PLAINTIFFS COUNSEL'S ATTORNEYS' FEES

On April 29, 1974, ten (10) days after the hearing on final settlement there were filed papers or motions on behalf of the objector: Objections to Affidavits, Motion to Intervene, a Motion to Stay Consideration of Proposed Settlement and to Allow Additional Discovery and a Memorandum of Law in Opposition to Proposed Settlement and Final Judgment.

■ The objection to the admissibility of certain of the affidavits is due to be overruled. Such objection is based upon the relevance or materiality of the matters therein contained. All of such affidavits do assert matters which have at least some bearing upon an evaluation of the likelihood of recovery in this action and are due to be considered. No objection was voiced to the affidavits at the time they were offered and no objection is made now on the basis that the court should, on such a hearing, preclude the use of affidavits. Objectors themselves have proffered evidence by affidavit at the hearing which was received into evidence.

■ The Motion of the objectors Allan B. Franklin and Doris M. Franklin to intervene in this action as parties plaintiff is due to be granted, in so far as plaintiffs seek leave to intervene as parties plaintiff. Objectors' motion would appear to seek to re-define the class represented by the plaintiffs. A class determination having been made by

order entered on January 25, 1974, objectors' motion is to be overruled to the extent that it goes beyond an application for leave to intervene as parties plaintiff.

 Having considered the Motion to Stay Determination to Permit Additional Discovery as amended, the court is of the opinion that such motion is due to be overruled. Objectors' counsel served their appearance in this action on March 19, 1974, one month prior to the hearing and made their request for a stay on April 29, 1974. The court is aware that the defendant Board produced a substantial number of documents in response to Interrogatories and Request for Production to the defendant Board and knows that plaintiff's counsel obtained access to the records and files of some brokers in the Jefferson County area who were not named as defendants in the complaint filed on November 21, 1972. Rather than have discovery begin anew in this action after the hearing to consider the proposed settlement, the court will overrule objectors' motion, as amended, to stay the determination.

I find the sum of $52,500 to be a reasonable attorney's fee for the services performed by James L. Shores of the firm of Johnston & Shores as attorney for the plaintiff and that defendants are due to pay to said attorney the sum of $52,500 at the time provided, for such payment in the Agreement of Settlement of this action.

Judgment shall be entered in keeping with the proposed final judgment of which the members of the class were given notice and in keeping with this opinion, which judgment shall include a description of the class included in the judgment and by exhibit, or otherwise, the names of the persons excluded. Attorneys for the original plaintiff and the defendants are directed to submit, after consultation with the clerk, a form of

such judgment, giving particular attention to the list of persons excluded from the class and to a listing of the parties defendant bound by the judgment.