In re HOLYWELL CORPORATION, et al.

CHOPIN ASSOCIATES, acting by Theodore B. GOULD and Miami Center Corporation, Its Partners, and Miami Center Limited Partnership, Acting by Theodore B. Gould and Miami Center Corporation, Its General Partners, Plaintiffs,

v.

Fred Stanton SMITH, as Trustee of the Miami Center Liquidating Trust, the Bank of New York, City National Bank of Miami, as Trustee of Land Trust # 5008793, Dade County, Florida, a Municipality, Joel Robbins, as Property Appraiser of Dade County, Florida, Fred Ganz, as Tax Collector of Dade County, Florida.

Bankruptcy Nos. 84–01590–BKC–SMW to 84–01594–BKC–SMW.

Adv. No. 88–0117–BKC–SMW–A.

United States Bankruptcy Court, S.D. Florida.

Nov. 18, 1988.

See also, Bkrtcy., 87 B.R. 712.

irrespective of whether the finishing of loading falls within the next time period.

Vance E. Salter, Coll, Davidson, Carter, Smith, Salter & Barkett, Miami, Fla., Thomas F. Noone, Emmet, Marvin & Martin, New York City, S. Harvey Ziegler, Kirkpatrick & Lockhart, Miami, Fla., for Bank of New York.

Robert Mark, Stearns, Weaver, Miller, Weissler, Alhadeff & Sitterson, P.A., Miami, Fla., Robert Musselman, Charlottesville, Va., for plaintiffs.

Theodore B. Gould, Charlottesville, Va., pro se.

Daniel Weiss, James B. Kracht, Asst. County Atty., Miami, Fla.

James McAuley, Dept. of Revenue, Tallahassee, Fla.

Herbert Stettin, Miami, Fla., for Fred Stanton Smith, c/o Keyes Co., liquidating trustee.

## ORDER APPROVING AMENDED SETTLEMENT OF AD VALOREM TAX CLAIMS

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE came before the Court for hearing in Miami on October 31, 1988 pursuant to an Order Setting Hearing on Trustee's Motion For Approval Of Amended Stipulation Settling Ad Valorem Tax Claims, dated October 11, 1988. The Court has heard the testimony presented, examined the exhibits received into evidence, observed the candor and demeanor of the witnesses who testified, considered the argument of counsel, and is otherwise fully advised in the premises. Based upon that testimony, exhibits and argument, the Court makes the following findings of fact and conclusions of law:

1. The Court had previously scheduled a hearing on a Motion for Approval of Compromise of Ad Valorem Tax Claims on April 28, 1988, and consolidated that hearing with a pending adversary proceeding brought by Chopin Associates et al., case # 88–0117–BKC–SMW–A.

2. On October 31, 1988, the Liquidating Trustee moved the Court to take judicial notice of all of the testimony, exhibits and argument received by the Court at the hearing held on April 28, 1988. No party in interest voiced any objection to this and the Court orally granted the motion. The Court has therefore, taken cognizance of and has considered as a part of the record concerning the Amended Settlement of Ad Valorem Tax Claims, the record made before the Court on the proposed settlement of the ad valorem tax claims previously heard on April 28, 1988.

3. On that date, the proponents of the settlement put in evidence testimony from John Fletcher, an attorney who specializes in ad valorem tax matters, that the burden of proof on a taxpayer requires proof by substantial competent evidence of the exclusion of every reasonable hypothesis of value used by the tax assessor, using recognized methods of valuation. Mr. Fletcher cited pertinent Florida law supporting this conclusion, and testified as to the difficulty imposed on a taxpayer in such circumstances.

4. The proponents of the settlement also elicited testimony from A.H. Blake, a former tax assessor of Dade County, that the tax settlement proposed was fair and reasonable, and was in the best interest of the liquidating trust. He concluded the settlement proposed favored the liquidating trust more than it did the Bank of New York.

5. The proponents also put in evidence the testimony of Fred S. Smith, the liquidating trustee. Mr. Smith is an experienced local real estate broker and testified

that, based on his experience as a broker and as president of Keyes Corporation, he believed the settlement is in the best interest of the liquidating trust. He specifically identified the letter agreements of February 24, 1988 between the liquidating trust, the Bank of New York and the Dade County Attorney; the letter of March 17, 1988 modifying that letter agreement, and the letter of March 22, 1988 further modifying that agreement. He agreed with that settlement and recommended it. In each instance, he confirmed the settlement was clearly favorable to the liquidating trust because it would terminate a number of pending ad valorem tax suits; would prevent exposure of the liquidating trust to judgments in favor of the County for sums far in excess of the sums to be paid under the terms of the settlement agreement; and would preserve the right of the debtors to continue to seek the invalidation of all claims asserted by the County for ad valorem taxes on the ground that no proofs of claim had ever been filed. The Court further notes that a settlement would stop the considerable attorneys' fee and cost expenses involved in prosecuting and defending the numerous state court ad valorem tax suits.

6. The Debtors placed into evidence a number of depositions taken in the adversary complaint, together with a large number of exhibits in support of their position that the proposed settlement was not in the best interest of creditors and that the County had no enforceable claims which it could assert because of its failure to file proofs of claim.

7. The County put on the testimony of Frank Jacobs, an assistant property appraiser, who testified as to the litigation risks and other considerations taken into account by the County in entering into the agreement. He also testified that the transaction was not structured in any manner so as to favor the Bank of New York over the liquidating trust.

8. The Court received evidence from Theodore B. Gould concerning the interest claimed by St. Joe Paper Company. Mr. Gould conceded he could not locate any written agreement concerning any continuing ownership interest by St. Joe Paper Company, nor any written evidence of any claim which that company might have for the recovery of overpayment of taxes for 1979.

9. From the testimony presented and a review of the exhibits and other documents put in evidence, it appears the issues involved for the years 1979, 1980 and 1981 are for refunds of real property taxes paid based on claims of overassessment. The settlement proposed includes a waiver by the liquidating trust of any further claim for refund for those years, concomitant with a waiver by the County of all claims for additional taxes, including People Mover and other special assessments and for personal property taxes.

10. The principal issue in the 1983 tax dispute involves a demand by Dade County for additional ad valorem taxes based upon a dispute concerning whether the office building property was substantially completed on the valuation date. The County has conceded for purposes of this settlement that the property was not substantially complete; a very considerable savings to the liquidating trust.

11. The dispute for the years 1984 and 1985 concerns claims of additional taxes due based upon disputed assessments of the entire property. The settlement adjusts the assessments very considerably in favor of the liquidating trust.

12. As a preliminary, the Court takes note of the fact that the Plan of Reorganization, which was confirmed by the Court and which has been substantially consummated, reflected the value of the property in question (inclusive of certain personal property) to be $255,600,000. There were MAI appraisals supporting this valuation, and the Bank of New York through its nominee paid this sum on October 10, 1985. Under such circumstances there is the possibility the County would argue the disputed assessments for 1984 and 1985 were reasonable and the liquidating trust might be liable for taxes which would be substantially in excess of the amounts agreed upon in the settlement proposal.

13. Under the terms of the original settlement proposal of April, 1988, the parties agreed to a schedule of assessed values, additional taxes due, and some pre and post-petition interest on those sums. A copy of that schedule is attached to these findings as Exhibit A.

14. The sums agreed to be paid constitute full satisfaction of all issues, interest and claims for taxes which were or could have been raised in any of the pending ad valorem tax litigation or in the matters which were filed concerning these claims for taxes.

15. As part of this settlement proposal, the County also agreed to settle its disputed ad valorem tax claims with the Bank of New York for periods subsequent to 1985 when the Bank of New York was the owner of the property in question.

16. As an additional consideration to the liquidating trust in the settlement, the Bank of New York and the liquidating trust have agreed the bank will reprorate the 1985 taxes previously received from the liquidating trust as a credit on the closing statement on October 10, 1985, and will refund to the liquidating trust those sums found to be due on reproration based on a reduced assessment, together with interest at 6.91%. It was estimated this will result in the liquidating trust receiving $400,000 to $500,000.

17. As a further part of the agreement between the liquidating trust and the County, the liquidating trust agreed to pay interest on the sums due the County under the settlement, at the rate provided by Florida Law from and after April 1, 1988. Following the conclusion of the hearing on April 28, 1988, and the submission by the parties and review by the Court of post trial memoranda, the Court expressed the view that it was satisfied the settlement was in the best interest of the liquidating trust with the exception of those sums provided in the settlement agreement to be paid to Dade County representing post-petition preconfirmation interest, which totaled approximately $155,000.00. The Court expressed the view that, as a matter of substantive law, payment of post-petition pre-confirmation interest to a nonconsensual lien creditor was not permissible.

18. The liquidating trustee, the Bank of New York and Dade County requested the Court grant leave to conduct further discussions in an attempt to resolve this remaining issue. The Court encouraged this. Thereafter, an amended stipulation for settlement of the ad valorem tax claims was filed with the Court. It provided there would be an additional reduction of $109,-870.90 of the sums to be paid by the liquidating trust as ad valorem taxes to the County. This meant that the sums to be paid by the liquidating trust would be adjusted downward from $3,430,753.97 to $3,320,883.07. This sum, together with interest at the rate of $25,455.41 per month from April 1, 1988, until paid to Dade County, would constitute the entire obligation of the liquidating trust to the County.

19. The approval of the proposed amended settlement agreement is a matter within this Court's sound discretion. *See In re Jackson Brewing Company,* 624 F.2d 599 (5th Cir.1980); *In re Teltronics Services, Inc.,* 762 F.2d 185 (2d Cir.1985); *In re Prudence Co.,* 98 F.2d 559 (2d Cir. 1938), *cert. denied,* 306 U.S. 636, 59 S.Ct. 485, 83 L.Ed. 1037 (1939).

■ In order to exercise this discretion properly, the Court must consider all of the relevant facts and evaluate whether the compromise suggested falls below the "lowest point in the range of reasonableness." *See e.g., In re Teltronics Services, Inc., supra* at page 189; *In re W.T. Grant Co.,* 699 F.2d 599, 608 (2d Cir.1983). The Fifth Circuit in *In re Jackson Brewing Co.,* 624 F.2d at 602 stated as follows:

To assure a proper compromise the bankruptcy judge must be apprised of all the necessary facts for an intelligent, objective and educated evaluation. He must compare the 'terms of the compromise with the likely rewards of litigation.' *Protective Committee for Independent Stockholders of T.M.T. Trailer Ferry, Inc. v. Anderson,* ('T.M.T. Trailer'), 390 U.S. 414, 425, 88 S.Ct. 1157, 1163, 20 L.Ed.2d 1, 10 (1968). He must

evaluate and set forth in a comprehensible fashion:

(1) the probability of success in the litigation, with due consideration for the uncertainty in fact and law,

(2) the complexity and likely duration of the litigation and any attendant expense,

(3) all factors bearing on the wisdom of the compromise.

*Id.* at 424–25, 88 S.Ct. at 1163, 20 L.Ed.2d at 9–10.

■ 20. In making its evaluation, this Court need not rest its decision whether to approve a settlement upon a resolution of ultimate factual and legal issues which underlie the disputes that are proposed to be compromised. *In re Teltronics Services, Inc., supra.* In a Fifth Circuit decision which is binding on this Court, *Florida Trailer and Equipment Company v. Deal,* 284 F.2d 567, 571 (5th Cir.1960), the Court stated:

Of course, the approval of a proposed settlement does not depend upon establishing as a matter of legal certainty that the subject claim or counterclaim is or is not worthless or valuable. The probable outcome in the event of litigation, the relative advantages and disadvantages are, of course, relevant factors for evaluation. *But the very uncertainties of litigation, as well as the avoidance of wasteful litigation and expense, lay behind the Congressional infusion of a power to compromise. This is a recognition of the policy of the law generally to encourage settlements. This could hardly be achieved if the test on hearing for approval meant establishing success or failure to a certainty. Parties would be hesitant to explore the likelihood of settlement apprehensive as they would then be that the application for approval would necessarily result in a judicial determination that there was no escape from liability or no hope of recovery and hence no basis for a compromise.* Thus, this Court need not resolve each disputed matter in determining the propriety of the settlement, rather, the Court may, and should,

make a pragmatic decision on the basis of all equitable factors. (Emphasis added).

■ 21. As noted in the prior discussion in this order, the Court has conducted both a legal and factual analysis of the probable outcome of the pending ad valorem tax cases. It is not, however, necessary that the Court have gone through such an analysis to the point of reaching a binding conclusion that one party or the other would prevail. Certainly, the Court has recognized the complexity of all of the issues involved, the length of time required to resolve all of these issues, the expense involved in resolving all of these issues, the uncertainty of result, and the potential devastating effect an adverse ruling would have upon the liquidating trust and its ability to pay claims to creditors and return the surplus to the debtors.

22. The compromise proposed to the Court is one which is an exercise of business judgment which appears to the Court to be sound, reasonable and practical. It recognizes a large savings in tax to the liquidating trust; it permits the debtor, by appeal only, to continue its attempt to invalidate the tax claims in their entirety for failure of the taxing authorities to have filed proofs of claim in these proceedings; and it assists in the orderly completion of the work to be done in ending this case.

23. One of the obligations imposed by *Jackson Brewing Co., supra,* upon bankruptcy courts engaged in determining whether to approve a settlement proposed requires a consideration of "all the factors bearing on the wisdom of the compromise". The Court believes it has done so, and it recognizes the benefits which flow to each of the parties involved. The taxing authorities receive a substantial amount of cash and an end to time consuming and expensive litigation on their part. The Bank of New York receives property free of any further claims by the taxing authorities, and the debtors receive a resolution of County tax claims on excellent terms. In sum, having reviewed the evidence and the documents received into evidence, together with having considered the equities in-

volved, the Court finds and determines that the amended settlement agreement does not "fall below the lowest point in the range of reasonableness". The terms of the amended settlement are reasonable and in the best interest of the liquidating trust.

Accordingly, it is hereby ORDERED AND ADJUDGED:

1. That the Amended Settlement Agreement be and it is hereby ratified, confirmed and approved, pursuant to Bankruptcy Rule 9019(a);

2. That the parties hereto are directed to implement and comply with the terms of the Amended Settlement Agreement as set forth in its entirety.

3. The Court will enter a separate Final Judgment dismissing adversary proceeding 88–0117–BKC–SMW–A, in accordance with the terms of these findings.

DONE AND ORDERED.

### FINAL JUDGMENT

The Court has this date entered an order approving amended settlement of ad valorem tax claims based upon findings and conclusions which are set forth in that order. The Court adopts and incorporates those findings and that order approving amended settlement of ad valorem tax claims as a part of this adversary proceeding.

In addition to the grounds set forth in that order, and in conformance with the Court's oral ruling announced on October 31, 1988, the Court finds and determines that Dade County is not barred from asserting a claim in these proceeding by reason of its failure to file proofs of claim in the Chapter 11 proceedings for ad valorem taxes for any of the years 1979 through 1985. All of the remaining issues raised in the Complaint are rendered moot by the Court's entry of the Order Approving Amended Settlement of Ad Valorem tax claims.

DONE AND ORDERED.