### In re CLARK OIL & REFINING CORPORATION ANTITRUST LITIGATION.

**MDL Docket No. 140.**

United States District Court,
E. D. Wisconsin.

Nov. 17, 1976.

As Amended Feb. 8, 1977.

Melville C. Williams, Chicago, Ill., for Clark Oil & Refining Corp.; Charles L. Dunlap, Clark Oil & Refining Corp., Milwaukee, Wis., House Counsel for Clark Oil & Refining Corp.

William E. Glassner, Jr., Robert B. Corris, Milwaukee, Wis., for plaintiffs in Myles Jackson case, C.A. No. 73–C–74.

John T. Cusack, Samuel J. Betar, Chicago, Ill., for plaintiffs in Ashcraft case, C.A. No. 73–C–566.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This litigation consists of two treble damage antitrust actions brought against Clark Oil & Refining Corporation ("Clark") in two judicial districts. The first, *Myles Jackson v. Clark Oil & Refining Corporation* ("Jackson"), Civil Action No. 73–C–74, was filed on February 15, 1973, in the United States District Court for the Eastern District of Wisconsin. The second, *Treamon Ray Ashcraft, et al. v. Clark Oil & Refining Corporation* ("Ashcraft"), Civil Action No. 73–C–566, was filed on March 5, 1973, in the United States District Court for the Northern District of Illinois. Both cases were brought as class actions filed on behalf of all present and former Clark dealers. The major thrust of the complaints in *Jackson* and *Ashcraft* is that Clark was able to secure compliance from its dealers-lessees in allegedly illegal marketing practices through the threat of termination of a dealer agreement or lease. The leases were typically of short duration and cancellable without cause on short notice, thus giving rise to Clark's leverage over its dealers.

On September 19, 1973, the Judicial Panel on Multidistrict Litigation ordered that the *Ashcraft* case be transferred from the Northern District of Illinois to the Eastern District of Wisconsin for coordinated and consolidated pretrial proceedings with the *Jackson* case, all pursuant to 28 U.S.C. § 1407. On December 3, 1973, this Court entered an order captioned "Practice and Procedure Order Upon Transfer Pursuant to 28 U.S.C. § 1407(a)" which stated that the "Court will be guided by the *Manual for Complex and Multidistrict Litigation*" in conducting pretrial proceedings.

In a memorandum decision and order entered January 17, 1974, this Court ordered "that this action be maintained as a class action with the class consisting of all present and former Clark retail service station dealers" pending completion of necessary discovery. On January 26, 1976, this Court found that the *Jackson* and *Ashcraft* cases may be "maintained as unconditional class actions on behalf of Clark dealers and former dealers for the purpose of effectuating a settlement of this litigation * *."

The case is presently before the Court on the motion of the parties for approval of a proposed master settlement agreement filed in this action January 12, 1976, a copy of which is attached as "Appendix A." Pursuant to the *Manual for Complex and Multidistrict Litigation*, § 1.46, a hearing was held on January 13, 1976, upon the motion for approval of the proposed master settlement agreement. As a result of this hearing, the Court found by order entered January 26, 1976:

"1. That these two actions [*Jackson* and *Ashcraft*] may be maintained as unconditional class actions on behalf of Clark dealers and former dealers for the purpose of effectuating a settlement of this litigation, and for such purpose only; and

"2. That the settlement proposed in the Master Settlement Agreement is

within the range of possible approval; and

"3. That there is probable cause to submit the settlement proposal to members of the class and to hold a full scale hearing on its fairness at which all interested parties will have an opportunity to be heard."

In accordance with Rule 23(e), F.R.Civ.P., class members were mailed a "Notice to Present and Former Clark Retail Dealers of Proposed Settlement of Class Actions, and a Hearing Thereon." The hearing was held February 26, 1976, and extensive testimony was offered by class members on the merits of the proposed settlement. The Court has also received additional testimony in the form of affidavits. All testimony has been augmented by the briefs, legal memoranda, and arguments of counsel.

For the reasons given below, and with the qualifications noted, plaintiffs' motion for approval of the proposed master settlement agreement must be granted.

I.

In summary terms, the proposed settlement agreement sets forth the following provisions. The settlement affects all named plaintiffs and members of the class who did not elect to opt out of the *Jackson* and *Ashcraft* suits. Effective as of the first day of the calendar month following approval of the settlement agreement by the Court, each then existing service station lease shall be cancellable by Clark during the balance of its term only for good cause. At the expiration of the term of each service station lease, Clark shall, except for good cause, offer the dealer-lessee a new three-year lease containing, *inter alia*, Clark's agreement to renew the three-year lease for successive three-year terms for each dealer-lessee who has been a Clark dealer-lessee for at least five years, and to terminate a dealer-lessee or not renew the lease only for good cause. The settlement agreement further provides for a procedure by which a dealer-lessee may contest any termination or refusal to renew the agreement. In most situations, this procedure consists of an appeal to the Clark Dealer Policy Committee and thereafter to a court or, if the parties so agree, to arbitration.

In addition, the settlement agreement provides that each dealer operating a service station as of the effective date of the settlement agreement (viz. the first day of the month following approval of the settlement by the Court) shall receive from Clark for the succeeding six months a credit of ½ cent per gallon on monthly purchases of gasoline from Clark. It is further provided that no such credit shall exceed $150 per month, or a total of $900 to each dealer. With approximately 1,000 current Clark dealers, this provision may mean up to $900,000 in credits accruing to class members against future purchases of gasoline. The settlement agreement also sets forth that each existing lease shall be deemed amended, as of the first day of the month following approval of the settlement by the Court, to provide for a minimum monthly rental payable by the dealer to Clark during the unexpired term of the lease of 1½ cents per gallon on the first 50,000 gallons of gasoline sold each month by the dealer plus 1 cent for each additional gallon sold each month. Testimony taken at the February 26, 1976, hearing revealed that the current rent provision in Clark's dealer leases provides for a $50 per month flat fee plus 3 cents per gallon on each gallon over 30,000 gallons of gasoline sold each month.

The settlement agreement further provides for the release, as of the date the settlement is approved by the Court, of all claims of Clark against the dealers and of all claims by the dealers against Clark, based upon any alleged violations of federal and/or state antitrust laws occurring prior to the date of said approval. In full satisfaction and discharge of all claims, including fees and expenses of counsel and costs, the settlement agreement provides that Clark shall pay the sum of $1,000,000 ("the settlement sum"). After payment from the settlement sum of plaintiffs' counsel fees, expenses, and costs in an amount to be awarded by the Court, the balance of the settlement sum is designated in the agree-

ment to be used for payments to the dealers pursuant to approved claims. The settlement agreement goes on to provide that no claim submitted by a dealer not a Clark lessee as of the effective date of the settlement agreement shall be approved until the dealer has settled all claims Clark may have against him. The settlement agreement does not release any claim of Clark against a present or former dealer for money owed to Clark. The dealers shall be paid pro rata from the settlement sum based on the total gallonage of gasoline purchased from Clark during the period February 15, 1969 through March 5, 1973. The settlement agreement also provides for the dismissal of certain other litigation between Clark and some of its dealers.

In argument made in support of the proposed settlement agreement, plaintiffs' counsel have made clear that the lease between Clark and its dealers was the primary target of this litigation. The new lease terms embodied in the proposed settlement—an initial term of three years, automatic successive renewal terms of three years, termination only for good cause, submission of all terminations to the Clark Dealer Policy Committee, and, if agreed to by the parties, binding arbitration governed by the rules of the American Arbitration Association—are claimed to rectify the imbalance of power which made possible Clark's allegedly unlawful activity. It is the position of plaintiffs' counsel that the settlement agreement achieves nearly all the relief prayed for in the complaints and provides specific benefits to class members that could not have been achieved if the case were litigated. The parties have, in fact, used the occasion of this litigation to restructure their basic business relationship.

## II.

Under Rule 23(e), F.R.Civ.P., "[a] class action shall not be dismissed or compromised without the approval of the court * * *." The granting of such approval is within the trial court's sound discretion. *State of West Virginia v. Chas. Pfizer & Co.*, 314 F.Supp. 710, 741 (S.D.N.Y.1970),

aff'd 440 F.2d 1079 (2d Cir. 1971), cert. denied, 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115 (1971); 3B Moore's Federal Practice ¶ 23.80[4] at 23–1555 (2d ed. 1975). In exercising that discretion the Court must keep in mind that the purpose of Rule 23(e) is to prevent the claims of nonparty class members from being unfairly disposed of when the named parties elect to settle. See *Norman v. McKee*, 431 F.2d 769, 774 (9th Cir. 1970), cert. denied, 401 U.S. 912, 91 S.Ct. 879, 27 L.Ed.2d 811 (1971). The generalized standard to be applied is whether the proposed settlement is fair, reasonable, and adequate. See, e. g., *Young v. Katz*, 447 F.2d 431 (5th Cir. 1971); *Zerkle v. Cleveland-Cliffs Iron Co.*, 52 F.R.D. 151 (S.D.N.Y. 1971). Assessing the fairness and reasonableness of a particular proposed settlement necessarily depends on the features of the individual case.

In this litigation the Court notes that the issue of short-term leases, said to be the main target of the underlying lawsuits, appears to be resolved to the plaintiffs' satisfaction by the proposed settlement agreement. The Court is also cognizant of the fact that these are private antitrust actions which are not following in the wake of a government suit and as such would require expensive and protracted litigation were they to go to trial. Although plaintiffs' counsel have expressed their confidence that they could establish Clark's violation of the antitrust laws, the Court is not unmindful of the substantial uncertainty of success in such matters and the difficulty of proving damages even should liability be established. The fact that seven out of approximately 1,000 present Clark dealers filed an objection to the proposed settlement is also to be considered by the Court. Finally, the Court is aware of the extensive discovery already undertaken by counsel which has provided a factual background for settlement negotiations and data supporting the overall reasonableness of the proposed settlement in counsel's mind.

The Court is concerned, in approving the proposed master settlement agreement,

with paragraph 1(d) of section IV of the settlement agreement which provides:

"(d) Each *then existing lease* of a Dealer shall be deemed amended to provide that the monthly rental payable by Dealer to Clark during the unexpired term of said lease shall be not less than one and one-half cents (1½¢) per gallon on the first fifty thousand (50,000) gallons of gasoline sold each month by Dealer plus one cent (1¢) for each additional gallon sold each month."

Specifically, the Court is concerned by the fact that many current Clark dealers who are members of the plaintiff class presently have unexpired leases which provide for a monthly rental of $50 per month plus 3 cents per gallon on each gallon over 30,000 gallons of gasoline sold each month by the dealer.* The Court requested supplemental briefs of counsel confined to the question of the Court's authority to approve a settlement agreement which, in effect, abrogates pre-existing contractual obligations of individual class members with the defendant and substitutes new terms. The question to be resolved is not whether the new rent provision, standing alone, is economically justifiable, see *Grunin v. International House of Pancakes*, 513 F.2d 114, 123–124 (8th Cir. 1975); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 456 (2d Cir. 1974); *Young v. Katz*, 447 F.2d 431, 433 (3rd Cir. 1971), but whether a settlement agreement may be approved which abrogates pre-existing contractual relationships of individual class members with the defendant.

No case has been cited to the Court, and no other case has been found, which addresses this precise issue under circumstances identical to those present here. Thus, although it has been held that a union may agree to a modification of an existing contract in settling a class action brought on behalf of its members, *Mungin v. Florida*

East Coast Railway Co.*, 318 F.Supp. 720 (M.D.Fla.1970), aff'd 441 F.2d 728 (5th Cir. 1971); cf. *Ford Motor Co. v. Huffman*, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953), the authority for consummating such a settlement is derived at least in part from the union's role as collective bargaining agent for its members who belong to the plaintiff class. And in *Grunin v. International House of Pancakes*, 513 F.2d 114 (8th Cir. 1975), although the Court affirmed the trial court's approval of a class action settlement which revised the existing franchise agreement between class members and the defendant, it was the precise franchise agreement provisions which were revised that served as the basis for the lawsuit. Here, according to plaintiffs' counsel, the short duration of the dealer leases and the cancellation clause—not the rent provision—were the target of this litigation. The settlement approved by this Court in *Klinzing v. Shakey's Incorporated*, (unreported, Case No. 69–C–344, E.D.Wis.) may be viewed in the same light as *Grunin*.

Nevertheless, there is a strong suggestion in the case law that a district court's authority to approve a class action settlement includes the power to approve agreed revisions in the pre-existing contractual relations of the parties. In its discussion, the *Grunin* Court stated:

" * * * [A] court cannot lend its approval to any contract or agreement that violates the antitrust laws. [Citations omitted.] However, we are equally mindful of the fact that 'neither the trial court in approving the settlement nor this Court in reviewing that approval have the right or the duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute.' *City of Detroit*, 495 F.2d at 456. As stated in *Young v. Katz*, 447 F.2d 431, 433 (3d Cir. 1971), 'In examining a pro-

* The effect of the new provision set forth in paragraph 2(d) of section IV of the settlement agreement is to raise the monthly rental payment of relatively low volume dealers. For example, a dealer selling 30,000 gallons of gasoline per month would be making a monthly rental payment of $450 instead of $50. It was the unanimous opinion of those testifying at the hearing held on the proposed settlement that the current rent provisions in the dealer agreements are unfairly low.

posed compromise for approval or disapproval * * * the court does not try the case. The very purpose of compromise is to avoid the delay and expense of such a trial.' [Citations omitted.] Thus, unless the terms of the agreement are per se violations of antitrust law, we must apply a 'reasonableness under the totality of the circumstances' standard to the court's approval. * * *

* * * * * *

" * * * There is evidence to suggest that a total victory, including a voiding of the equipment leases and an award of damages, would have been financially disastrous if not fatal to IHOP [International House of Pancakes]. Nonetheless, the district court in rejecting the first settlement proposal indicated that some revision in the equipment lease was essential. Given the court's directive and IHOP's cash flow difficulties, the parties worked out a settlement which gave valuable concessions to the franchisees yet maintained IHOP's corporate viability. * * Given the additional fact that any compromise involves some give and take by both sides, we feel that the district court's approval of this settlement was justified." 513 F.2d at 123–125.

▆▆▆ The Court in *Grunin* suggests a broad approach in scrutinizing a proposed settlement agreement in an antitrust case brought as a class action. Such an approach is in keeping with the Court's general role in such matters of determining that the proposed settlement is fair, reasonable, and adequate, and the recognized policy in the law favoring the amicable resolution of disputes. With these principles in mind, the Court, which has lived with this case for three years, finds that the terms of the settlement agreement contain no clear violations of the antitrust laws but do include important concessions benefitting the parties to this lawsuit. As such, the terms of the proposed settlement agreement affecting the parties to this suit represent a fair and reasonable resolution of the underlying controversy herein and will be approved.

### III.

Paragraph 3 of section IV of the master settlement agreement provides for the payment of plaintiffs' counsel fees, expenses, and costs in an amount to be awarded by the court out of the settlement sum. Plaintiffs' counsel in the *Ashcraft* litigation have petitioned the court for an award of counsel fees at $125 per hour in the amount of $250,000 plus out-of-pocket costs and expenses of $4,777.79, and estimated future out-of-pocket costs and expenses of $2,000, for a total of $256,777.79. Estimated future costs and expenses cover charges expected to be incurred in consummating the proposed settlement. Counsel in the *Jackson* case have petitioned the court for an award of fees at $58.15 per hour in the amount of $345,868.54 plus out-of-pocket costs and expenses of $57,631.46, for a total of $403,500. The expense figure includes $19,415.11 for retaining Minnesota counsel to handle disputes in that state between Clark and its dealers. *Jackson* counsel also notes that it has received $113,600 over a three-year period from class members which, according to an agreement between *Jackson* counsel and the class members, will be refunded from the award of fees and expenses to those class members who made the payments. Similarly, class members have paid $10,877 of the total expense of $19,415.11 attributable to Minnesota counsel, and it has also been agreed that the amount paid to Minnesota counsel will also be refunded to those class members who have made the payments from the amount awarded by the Court. Unlike *Ashcraft* counsel, *Jackson* counsel have not included in their petition for fees and expenses an estimate for future charges expected to be incurred in consummating this settlement. All counsel have submitted in support of their petitions for fees documents evidencing the time spent working on the case, expenses incurred, briefs, and, in the case of *Ashcraft* counsel, affidavits evidencing counsel's standing before the bar.

▆▆▆ Initially, it should be noted that this Court does have the ability to award reasonable fees and expenses out of the

settlement sum. The complaint in each case prays for such an award, and section 4 of the Clayton Act, 15 U.S.C. § 15, the statute under which these actions were brought, provides for the recovery of the cost of the suit, including a reasonable attorney's fee. Moreover, there are sound reasons in public policy for allowing such an award. Private antitrust litigation is widely recognized as an effective supplement to government enforcement of the antitrust laws and contributes to the maintenance of a competitive economy. See, e. g., *Hawaii v. Standard Oil Company of California*, 405 U.S. 251, 262, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972). This is the rationale for the encouragement Congress has given to private antitrust actions in section 4 of the Clayton Act by providing for the recovery of fees and expenses by the successful plaintiff. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 263, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). An award of fees and expenses in multidistrict class actions concluded by settlement is plainly contemplated by the *Manual for Complex Litigation* in part I, section 1.47.

■ Although the amount of fees to be awarded is committed to the discretion of the district court, the courts of this circuit have developed a generally accepted set of factors to be used in determining an appropriate award of fees and expenses in a given case. These factors include the magnitude and complexity of the litigation, the quality of the services provided, the time and labor spent, and the beneficial result achieved. *Arenson v. Board of Trade of the City of Chicago*, 372 F.Supp. 1349 (N.D.Ill. 1974). See also *Ellis v. Flying Tiger Corporation*, 504 F.2d 1004 (7th Cir. 1972); *Colson v. Hilton Hotels Corporation*, 59 F.R.D. 324 (N.D.Ill.1972); *Illinois v. Harper & Row Publishers, Inc.*, 55 F.R.D. 221 (N.D.Ill. 1972); *Manual for Complex Litigation*, part I, section 1.47.

In analyzing the magnitude and complexity of this litigation, the Court is aware of the fact that the underlying cases are class actions with thousands of class members. The Court notes in this regard the continu-

ing consultation of *Jackson* counsel with class members supporting the litigation. It is also relevant that the issues presented in these antitrust cases are complex and required the collection of large amounts of data in order to frame a proper theory for recovery and to amass evidence in support of the complaint. At the time the proposed settlement agreement was reached, this work was largely completed as counsel were working toward an April trial date. The job of preparation was made considerably more difficult by the fact that these private actions did not follow in the wake of cases brought by the government, as is usually the case.

Little need be said of the quality of services provided except to note that plaintiffs in these actions were and are represented by counsel who enjoy an admirable professional reputation at the bar. Counsel for the *Ashcraft* plaintiffs are specialists in antitrust work of this nature. As heretofore mentioned, the Court has lived with this litigation for more than three years and has had considerable opportunity to observe counsel's work. The memoranda, briefs, and arguments of counsel have set forth effectively both the position of their clients and the law applicable to the numerous questions this matter encompasses. The services provided have been valuable to the Court in reaching its decisions.

The time spent by counsel working on this case, as evidenced by the timesheets and other documentation submitted, has been considerable. *Ashcraft* counsel represent that 1,646 hours have already been devoted to this litigation, and they estimate 354 more hours will be required to wind up the matter in accordance with the terms of the settlement agreement, which provides that claims of class members to a portion of the settlement sum must first be reviewed by counsel. Thus, total time expended by *Ashcraft* counsel is 2,000 hours. *Jackson* counsel, designated liaison counsel in these cases by previous order of this Court, have expended 5,948.8 hours thus far, without an estimate of the future time needed to consummate the settlement agreement.

Although all these points are significant, the final factor to be considered, the beneficial result achieved, is to the Court's mind the most important area to be evaluated in considering the question of reasonable attorneys' fees in this matter. In taking this position, the Court echoes the view of Judge Decker who, in speaking of the benefits conferred upon class members, stated: "There is no better test than this of the efficacy of the services rendered." *State of Illinois v. Harper & Row Publishers, Inc.*, 55 F.R.D. 221, 224 (N.D.Ill.1972). See also *In Re Irving-Austin Building Corp.*, 100 F.2d 574, 578 (7th Cir. 1938).

In monetary terms the settlement is worth approximately $1,900,000 to the members of the class. The settlement sum is $1,000,000 cash, and the credits to be made available to the 1,000 present Clark dealers can total an additional $900,000. It is, however, the nonmonetary features of the settlement agreement which plaintiffs' counsel urge to be the most valuable benefits included in the agreement. These include the provisions that the business arrangement between Clark and its dealers be terminated only for good cause, the agreement that dealer contracts be renewed for successive three-year terms subject to the good cause qualification, and the elimination of what were alleged to be price fixing, price discrimination, and tying arrangements on products other than gasoline. Although these nonmonetary provisions are not susceptible of valuation in conventional terms, the Court is convinced that they confer real and substantial benefits upon members of the class. Newfound security and independence for present and future Clark dealers should result, and Clark's alleged termination or nonrenewal of dealer contracts without good cause, which plaintiffs' counsel cite as the catalyst for this litigation, will be eliminated. Moreover, the more competitive retail gasoline market which should flow from a more secure and independent group of Clark dealers will generate obvious benefits which will inure to the public generally.

Thus, the Court finds that under applicable principles of law, this is an appropriate case for an award of attorneys' fees and expenses. See, e. g., *Arenson v. Board of Trade of the City of Chicago*, supra. The Court, however, is not prepared to approve the petitions as submitted by plaintiffs' counsel. In arriving at this decision, the Court acknowledges that counsel have submitted a substantial number of hours devoted to this litigation, and normally command a high hourly rate. It is, however, the better view that in matters such as these "no precise or mathematical formula is mandated; what is required is that, giving due consideration to all relevant and significant factors, the court award a sum that is fair and reasonable—one that is neither excessive nor inadequate." *Levin v. Mississippi River Corporation*, 377 F.Supp. 926 (S.D.N.Y.1974), aff'd 508 F.2d 836 (2d Cir. 1974). See also *Alpine Pharmacy, Inc. v. Chas. Pfizer & Co.*, 481 F.2d 1045, 1051 (2d Cir. 1971), cert. denied, 414 U.S. 1092, 94 S.Ct. 722, 38 L.Ed.2d 549 (1973). Given the vagaries of class action litigation, overemphasis on time spent to the exclusion of other considerations would be inappropriate.

With these principles in mind, three important features of the settlement agreement should be noted. The first is that the benefits derived from the proposed settlement agreement extend mainly to present Clark dealers who number approximately 1,000 out of a class that exceeds 5,000 members. Only the settlement sum, less the expenses and fees that are allowed, will be available for distribution to past Clark dealers who were associated with Clark during the relevant years. The remaining features of the agreement—gasoline purchase credits, no termination or nonrenewal without good cause, three-year dealer contracts, etc.—only benefit those who are current dealers. Had the case proceeded to trial and the plaintiffs prevailed, it is likely that the recovery would have been largely monetary and therefore available for distribution to all class members. Indeed, in arguing strongly for ap-

proval of the proposed settlement agreement, plaintiffs' counsel have stressed the point that the bargained-for provisions included therein effectively restructure the industrial relationship of the parties and would have been impossible to achieve had the case not been settled. This Court is of the opinion that any measurement of the benefits generated by this settlement must reflect the fact that the burden of fees and expenses awarded must be disproportionately borne by those class members who may look only to the settlement sum for their benefit.

The second feature, closely related to the first, is the fact that, taking the class as a whole, the measure of benefits derived from the settlement is inversely related to the amount of fees and expenses awarded. Since the settlement sum is the source of the fee and expense award, the more that goes to counsel the less is available for distribution to the class. Any measure of the benefits generated by the settlement should reflect this fact as well. But on the other hand, this is not the determining factor, for the real object of this antitrust case is not damages but the restructuring of the relationship between Clark and its dealers.

Thirdly, the Court is of the view that the amount of time spent by counsel as reflected in the documents tendered to the Court overstates the time necessary to achieve the settlement agreement under all the facts and circumstances of this case. Counsel in *Ashcraft* and *Jackson* have tried to avoid a duplication of effort in preparing these cases for trial and negotiating the settlement agreement. Nevertheless, some degree of efficiency is unavoidably lost in having the interests of an identical class represented by two different sets of counsel, and such was the case in the present matter. Moreover, by virtue of the fact that this litigation involves a large class of plaintiffs, some of the services rendered by counsel involve the ministerial and administrative activities necessary to effectively manage a class action suit. The time submitted by counsel must be evaluated with this in mind, especially in the case of *Ash-*

*craft* counsel who have included an estimate of the time required to consummate the settlement agreement by the processing of class members' claims in their petition. See *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 382 F.Supp. 999 (E.D.Pa.1974).

Fourthly, the rate of $125 per hour is higher than this Court can approve.

For all these reasons, the Court views the fees requested in the petition of counsel to be excessive. Accordingly, the Court will approve those expenses as submitted to it by counsel ($6,777.79 for *Ashcraft* counsel; $57,631.46 for *Jackson* counsel), 75 per cent of the fees requested by *Ashcraft* counsel ($187,500), and 85 per cent of the fees requested by *Jackson* counsel ($293,988.26). The percentage figure used in calculating counsel's fees in *Jackson* is higher since this award includes the Court's best estimate of future fees and expenses incurred in consummating the settlement agreement and does not include a factor for the reduction in their hourly rate.

Now that the Court has approved the settlement agreement and determined the amount of attorneys' fees, the next question to be determined is whether or not each member of the class consisting of "present and former Clark retail service station dealers" should pay the same amount toward the attorneys' fees out of the settlement sum of $1,000,000.

It is apparent that the settlement agreement primarily benefits the present Clark service station dealers and that they should, therefore, be responsible for a larger percentage of the attorneys' fees than the former Clark service station dealers. Therefore, for the purpose of payment of fees, the class which was determined on January 17, 1974, is broken down into two subclasses, one class being the present Clark retail service station dealers and the other subclass being the former Clark retail service station dealers. Therefore, up to two-thirds of the attorneys' fees shall come out of the portion of the settlement sum that the present Clark dealers are entitled to, and the balance of the attorneys' fees shall

come out of the portion of the settlement sum that the former Clark dealers are entitled to.

IT IS THEREFORE ORDERED that the master settlement agreement be and it hereby is approved as submitted to the Court, and counsel are hereby directed to commence forthwith the consummation of the settlement agreement in accordance with its terms.

IT IS FURTHER ORDERED that counsel in the *Ashcraft* case be and they hereby are awarded attorneys' fees and expenses in the amount of $194,277.79, to be paid out of the settlement sum as hereinafter provided, this amount to include fees and expenses incurred in consummating the final disposition of this action.

IT IS FURTHER ORDERED that counsel in the *Jackson* case be and they hereby are awarded attorneys' fees and expenses in the amount of $351,619.72, to be paid out of the settlement sum as hereinafter provided, this amount to include fees and expenses incurred in consummating the final disposition of this action.

IT IS FURTHER ORDERED that the attorneys' fees be paid out of the settlement fund in the following manner: two-thirds of the fee shall come out of that portion of the settlement fund that the present Clark dealers are entitled to, and one-third shall come out of that portion of the settlement fund that the former Clark dealers are entitled to. If the amount that the present dealers are entitled to is not enough to pay two-thirds of the attorneys' fees, then the amount not paid out of the sum the present dealers are entitled to will be paid out of the amount that the former dealers are entitled to.

IT IS FURTHER ORDERED that counsel for the plaintiffs prepare the order for judgment and submit it to opposing counsel for approval as to form only.

APPENDIX A

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In Re: Clark Oil & Refining Corporation | MDL Docket No. 140 |
| Antitrust Litigation | (All Cases) |

MASTER SETTLEMENT AGREEMENT

I.

*Introduction*

This is a Master Settlement Agreement (hereafter referred to as "Agreement") whereby the parties to this Agreement settle this class action and certain other litigation, subject to approval of the Court. Notice of this settlement shall be directed to all members of the class pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

This Agreement is entered into by the defendant, Clark Oil & Refining Corporation (hereafter referred to as "Clark"), a Wisconsin corporation whose general office is located at 8530 West National Avenue, Milwaukee, Wisconsin 53227, and by Melville C. Williams, Esq., of Pope, Ballard, Shepard & Fowle, 69 West Washington

**514**

Street, Chicago, Illinois 60602, a counsel to Clark in this class action.

This Agreement is entered into by the plaintiff and class members by their attorneys, Samuel J. Betar, Esq., of Schippers, Betar, Lamendella & O'Brien, 79 West Monroe Street, Chicago, Illinois 60603 and John T. Cusack, Esq., of Gardner, Carton & Douglas, One First National Plaza, Chicago, Illinois 60603, and William E. Glassner, Jr., Esq., of Charne, Glassner, Tehan, Clancy & Taitelman s. c., 211 West Wisconsin Avenue, Milwaukee, Wisconsin 53203.

## II.

### History of This Class Action

On February 15, 1973, *Myles Jackson v. Clark Oil & Refining Corporation*, Civil Action No. 73–C–74, was filed in the United States District Court for the Eastern District of Wisconsin as a class action on behalf of all then Clark dealers. Counsel for the plaintiff in this cause is William E. Glassner, Jr.

On March 5, 1973, *Treamon Ray Ashcraft, et al. v. Clark Oil & Refining Corporation*, Civil Action No. 73–C–566, was filed in the United States District Court for the Northern District of Illinois as a class action filed on behalf of all Clark dealers, or lessees, as of March 5, 1973, and all former Clark dealers who were Clark dealers at any time from March 5, 1969, through March 5, 1973. Counsel for the plaintiffs in this case are Samuel J. Betar and John T. Cusack. This case was filed by eighty present or former Clark retail gasoline station dealers.

On September 19, 1973, the Judicial Panel on Multidistrict Litigation ordered that the *Ashcraft* case be transferred from the Northern District of Illinois to the Eastern District of Wisconsin for coordinated and consolidated pre-trial proceedings with the *Jackson* case, pursuant to 28 U.S.C. § 1407.

By its January 17, 1974 MEMORANDUM DECISION AND ORDER this Court ordered "that this action be maintained as a class action with the class consisting of all present and former Clark retail service sta-tion dealers" and that "this ORDER is conditional" pending the completion of necessary discovery.

By its ORDER dated July 30, 1974, this Court ordered that its NOTICE OF PENDENCY OF CLASS ACTION, dated July 29, 1974, be sent to all present and former Clark dealers at their last address known to Clark. Pursuant to this ORDER, class action notices were sent to all present Clark dealers and all Clark dealers who were such dealers in the period from January 1, 1969, through September, 1974.

## III.

### Reasons for the Settlement of This Class Action

The settlement of this class action is dictated by the desire of the parties thereto to end disputes. It is also based on their mutual recognition that the best interests of both Clark and the Clark dealers will be served by ceasing litigation and establishing a spirit of trust and cooperation. As the Court stated during the November 15, 1974, pre-trial conference, this dispute between Clark and the Clark dealers is to the detriment of both and has gone on long enough.

Further, this Settlement Agreement spells out new working arrangements between Clark and the Dealers that could not have been achieved by continuing the litigation and that are available only through a settlement. It is believed they will prove to be beneficial to both the Dealers and Clark.

This Settlement Agreement shall not be construed to be an admission of liability by any party.

## IV.

### Terms of This Settlement Agreement

Based on the foregoing considerations, the parties agree as follows:

1. Those persons who are either named plaintiffs or members of the class and who have not opted out of the *Jackson* and *Ashcraft* suits are hereinafter referred to collectively as "The Dealers," and individually as "Dealer."

2. Effective as of the first day of the calendar month following approval of this Master Settlement Agreement by the Court:

(a) Each then existing station lease of The Dealers shall be cancellable by Clark, during the balance of its term, only for cause.

(b) At the expiration of the term of each such station lease, Clark shall, except for cause, offer the Dealer-lessee a three-year lease containing, among other things, the substance of the provisions attached hereto as Exhibit I.

(c) Each Dealer *then* operating a station under a lease with Clark shall receive from Clark for the succeeding six (6) months, a credit of one-half cent (½¢) per gallon on his monthly purchases of gasoline from Clark, but no such monthly credit shall exceed one hundred fifty dollars ($150), nor shall the total payments to a Dealer exceed nine hundred dollars ($900).

(d) Each *then existing lease* of a Dealer shall be deemed amended to provide that the monthly rental payable by Dealer to Clark during the unexpired term of said lease shall be not less than one and one-half cents (1½¢) per gallon on the first fifty thousand (50,000) gallons of gasoline sold each month by Dealer plus one cent (1¢) for each additional gallon sold each month.

3. Further, in full satisfaction and discharge of all claims, including fees and expenses of counsel and costs, Clark shall pay one million dollars ($1,000,000). After payment from this money, of plaintiffs' counsel fees, expenses and costs, in the amount awarded by the Court, the balance of such funds shall be used for payment by Clark to The Dealers pro rata based on total gallonage of gasoline purchased from Clark during the period February 15, 1969 through March 5, 1973, pursuant to Approved Claims, within thirty (30) days after receipt of, and pursuant to, a schedule of payments to be prepared by plaintiffs' counsel. Clark agrees to furnish the necessary information and assistance, if requested by plaintiffs' counsel, in connection with the preparation of the schedule of payments.

4. "Approved Claims" as used herein means claims received from The Dealers and approved by the undersigned plaintiffs' counsel. A Statement of Claim form is attached hereto as Exhibit II.

5. No claim submitted by any Dealer not *then* a Clark lessee, shall be approved by undersigned plaintiffs' counsel until (1) the said Dealer has settled all claims Clark may have against him and (2) Clark has informed counsel it has no unsettled claims against him.

6. The *Ashcraft* and *Jackson* complaints shall be dismissed with prejudice as to each Dealer and counterclaims shall be dismissed without prejudice, all parties to bear their own costs. Clark's antitrust suit No. 74–C–543, including counterclaims, shall be dismissed with prejudice.

7. The parties agree to settle the Hohlweck, Meysembourg, Leistikow, and Hayes eviction suits by dismissing them, including counterclaims, with prejudice. Hohlweck shall be offered a lease of his present station for the balance of Clark's lease of the service station site. Nothing in this Settlement Agreement shall be construed as an agreement by Clark to enter into a lease with him at another site upon the expiration of said Clark's lease. Hayes shall also be offered a lease of his present station site.

8. The thirteen trademark suits pending in Wisconsin courts against Dealers shall be settled by consent judgments containing provisions stating in substance, (1) the Court has jurisdiction of the parties and the subject matter, (2) the judgment shall apply to successors, etc., (3) the Court retains jurisdiction, (4) all counterclaims are dismissed with prejudice, and (5), the following paragraph:

The defendant is enjoined and restrained from using or displaying without the express consent, license or authority of plaintiff, any label, trademark, trade name, design, or pattern registered by plaintiff in accordance with Wisconsin law, in connection with the sale or offer of sale by defendant of any gasoline neither refined nor sold by plaintiff.

9. All issues settled by this Settlement Agreement that are issues in other pending litigation in which either WILLIAM E. GLASSNER, JR., JOHN T. CUSACK, or SAMUEL J. BETAR represents a Clark dealer, or a former dealer, shall be deemed settled by this Agreement and shall be dismissed from such other litigation by appropriate stipulations.

10. Upon approval of this Settlement Agreement by the Court, Clark on the one hand, and each Dealer on the other hand, shall each be released from all claims of the other based upon any alleged violations of federal and state antitrust laws occurring prior to the date of said approval.

11. Neither the execution of this Master Settlement Agreement, any provision thereof, nor approval of this Agreement by the Court, shall be construed or deemed to be a release of any present or former Dealer, or dealer, of any claim Clark may have against him for moneys due Clark.

12. This Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto, their respective heirs, executors, administrators, successors and assigns.

13. This Settlement Agreement shall be of no force and effect until approved by the Court.

Dated: December 26, 1975

### Exhibit I

1. Clark agrees to renew this Agreement, upon its expiration, for successive three (3) year terms subject to the following conditions:

1(a) Dealer shall, on the expiration date, have been a Dealer-lessee of Clark for at least five (5) years.

1(b) If Clark plans to terminate the use of said premises as a station selling motor fuel prior to three years after the expiration of this Agreement, Clark need not renew this Agreement or any successor Agreement for a term exceeding the expected date of such termination.

1(c) Clark need not renew this Agreement or any successor Agreement if Clark has good cause for not renewing it.

1(d) Good cause shall include, but shall not be limited to, refusal of Dealer to accept a modification of this Agreement, or a successor thereof, requested by Clark; provided, however, that if Clark refuses to renew this Agreement for this reason, Dealer may contest said refusal under the procedure stated hereinafter on either the ground that the said modification is prohibited by law or on the ground that Clark requested said modification for the purpose of causing Dealer to reject it, but on no other ground.

1(e) In the event Clark decides not to renew either this Agreement or a successor agreement, Clark shall give Dealer thirty (30) days prior written notice thereof and state the reason therefor.

2(a) Clark may terminate this Agreement at any time during the first four (4) months of the term hereof by giving Dealer at least ten (10) days prior written notice of such termination, provided, however, that if Dealer was a dealer in Clark motor fuel during the year preceding this Agreement, said four (4) month period shall be shortened by the length of time that Dealer was a dealer during that year.

2(b) Clark may, at its option, after ninety (90) days written notice, terminate this Agreement and re-enter the premises without prejudice to any other rights or remedies hereunder or by law, if Clark has in good faith determined either (1) to terminate the sale of motor fuel at the premises, or (2) that the premises are to be sold.

2(c) Except as provided in paragraphs 2(a) and 2(b) hereof Clark may terminate this Agreement only for cause.

2(d) If Dealer wishes to contest any termination or refusal to renew this Agreement, or any successor Agreement, by Clark, other than a termination under either paragraph 2(a) or 2(b) hereof, he may do so only pursuant to the following procedures:

2(d)(1) Dealer shall within fifteen (15) days after termination or after receipt of the notice of refusal to renew,

appeal the termination to the Clark Dealer Policy Committee, which has been established by Clark. Rules for carrying out the procedure to be followed by this Policy Committee and any changes thereof shall be furnished by Clark. Clark and Dealer agree to be bound by the procedure as provided in said rules.

2(d)(2) Either Dealer or Clark may serve a written notice of demand for ARBITRATION of an adverse decision and the merits of the dispute on the other party within thirty (30) days after receipt of the written decision of said Policy Committee. If the party receiving the said demand agrees, any controversy or claim arising out of said termination shall then be settled by ARBITRATION in accordance with the rules of the AMERICAN ARBITRATION ASSOCIATION and judgment on the award rendered by the arbitrator or arbitrators may be entered in any Court having jurisdiction thereof. The parties shall pay all costs and expenses of the arbitration as provided in the rules of the American Arbitration Association.

2(d)(3) If Dealer does not institute a review by arbitration of the decision of the Clark Dealer Policy Committee, or file suit either to prevent termination or compel renewal within thirty (30) days after receipt of the decision of said Policy Committee, he agrees to promptly deliver possession of the premises to Clark peacefully and quietly.

3. If Dealer wishes to remain in possession of the premises until a final decision on his appeal to the Policy Committee, and arbitration or litigation, he may do so, subject to the following conditions and procedures:

3(a) Dealer shall promptly pay Clark the amount of any moneys owed Clark except as to any amount which is the subject of a dispute between them. Any amount in dispute shall be promptly paid by Dealer to The Marine National Exchange Bank, Milwaukee, Wisconsin, to be held in escrow by said Bank and paid as directed in the final decision in said dispute. Said final decision shall be that of the Dealer Policy Committee, if no litigation is commenced or no arbitration requested as provided above. In the event of litigation, said final decision shall be one that is non-appealable or with respect to which the time for appeal has expired.

3(b) Promptly after an adverse decision of the Dealer Policy Committee, Dealer shall post a bond, if requested in writing by Clark, guaranteed by a bonding company satisfactory to Clark, in the amount of $5,000, which bond shall guarantee payment of (a) future obligations to Clark and (b) any damages to Clark by reason of Dealer's retention of possession of the premises. No bond need be posted if Dealer has surrendered possession of the premises to Clark.

3(c) When Dealer has posted the required bond, this Agreement, or any successor Agreement, shall continue in effect until the final decision in the above proceedings, at which time, if said decision is adverse to Dealer, Dealer agrees to quit and deliver up the premises to Clark peacefully and quietly. If the final decision is in favor of Dealer, this Agreement, or any successor Agreement shall be reinstated or renewed as the circumstances may require and Clark shall pay Dealer the cost of the premiums for said bond. The parties agree to implement the final decision as expeditiously as possible.

Exhibit II to follow.

**518**

### Exhibit II

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN